IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 21-10924

## CHRISTOPHER WOOTEN,

*PETITIONER-APPELLANT.,*

V.

## BOBBY LUMPKIN,

DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,
*RESPONDENT-APPELLEE.*

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

## APPELLANT'S INITIAL BRIEF

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

J. MATTHEW WRIGHT
ASSISTANT FEDERAL PUBLIC DEFENDER
500 South Taylor Street
Suite 110
Amarillo, Texas 79101
(806) 324-2370
Matthew_Wright@fd.org

Counsel for Mr. Wooten

## Certificate of Interested Persons
### *Wooten v. Lumpkin*, Case No. 21-10924

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant: | Christopher Wooten |
| Petitioner's Counsel: | Federal Public Defender for the Northern District of Texas<br>Jason D. Hawkins<br>Jessica Graf<br>J. Matthew Wright |
| Respondent's Counsel: | Texas Attorney General<br>Cara Hanna<br>Lori Denise Brodbeck<br>Nathan Tadema |
| District Judge: | Hon. James Wesley Hendrix<br>Hon. Sam Cummings |
| Magistrate Judge: | Hon. E. Scott Frost<br>Hon. John Parker |

/s/ J. Matthew Wright
Lead Counsel for Appellant

## Statement Regarding Oral Argument

Appellant requests oral argument.

# Table of Contents

Certificate of Interested Persons..................................................................................... ii

Statement Regarding Oral Argument........................................................................ iii

Table of Authorities.................................................................................................. vii

Jurisdictional Statement .............................................................................................. 1

Certified Issues for Review ......................................................................................... 1

Statement of the Case.................................................................................................. 1

    A.   Mr. Wooten pleaded guilty to an enhanced felony DWI after the
        trial court incorrectly informed him that a prior disposition was
        a final conviction sufficient to satisfy the State's burden to prove
        felony DWI....................................................................................................... 2

        1.   Mr. Wooten's indictment purported to charge a felony DWI
            punishable by a minimum of 25 years and a maximum of life in
            prison. ....................................................................................................... 2

        2.   In fact, Mr. Wooten was never finally convicted of DWI in Case
            31,429, and that case could not satisfy the prior-conviction element
            of DWI........................................................................................................ 5

        3.   The State and Mr. Wooten initially agreed to a plea bargain to
            unenhanced felony DWI with an eight-year sentence, but the trial
            judge balked. Everyone finally agreed to a thirteen-year sentence.............. 6

        4.   At the change-of-plea hearing, the trial judge incorrectly advised
            Mr. Wooten that his 1983 DWI resulted in a final conviction. ................ 7

    B.   The state habeas court perpetuated the trial court's error by again
        failing to recognize that the 1983 DWI was not a proper element
        of felony DWI. ............................................................................................ 10

C.  Years after Mr. Wooten commenced federal litigation, the State finally conceded (and the state courts found) that the 1983 DWI was non-final and ineligible to elevate the instant offense to a felony. ................................................................... 11

D.  The district court denied Mr. Wooten's § 2254 motion by disregarding the state habeas court's findings and applying § 2254(d) deference to its own reasoning. ................................. 12

E.  While this appeal was pending, Mr. Wooten and the Howard County District Attorney filed a joint request that the Texas CCA reopen the first state habeas proceeding and grant relief. The state court denied that motion. ........................................ 14

Summary of the Argument ................................................... 14

Argument ................................................................................ 15

Standard of Review ............................................................... 15

I.  The state trial court violated Mr. Wooten's right to due process when it predicated his conviction and sentence on misinformation and a misreading of court records. ............................................................. 16

A.  The district court found that the Texas Court of Criminal Appeals denied Mr. Wooten's due process claims on the merits. ................ 17

B.  The last reasoned decision in state court is factually and legally indefensible. .............................................................. 18

1.  The trial court's habeas decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." ..................... 20

2.  The trial court's habeas decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." .......................................... 21

3.  Respondent has not rebutted the presumption that the Texas CCA adopted the unreasonable trial-court decision. ....................... 23

C.  There is no evidence to suggest that the TCCA adopted the district court's alternative waiver analysis. .................................... 28

    1.  There is no evidence that the TCCA applied a waiver analysis. ............. 28

    2.  The TCCA routinely rejects the waiver argument in materially identical circumstances. ............................................ 28

    3.  In all likelihood, the TCCA trusted and relied on the trial court to figure out the facts. ................................................... 30

II.  Mr. Wooten's guilty plea and associated waivers were tainted by misadvice about the nature of the 1983 DWI disposition. ............................ 30

  A.  This claim overcomes the re-litigation bar for many of the same reasons the *Townsend* claim overcomes the bar. ............................ 32

  B.  The trial court, defense counsel, and the prosecution gave flatly incorrect advice about the way Texas DWI law applies to undisputed facts in the case. ............................ 34

III.  Mr. Wooten's defense counsel rendered ineffective assistance of counsel. ................................................................ 38

  A.  If Hamby had done his job, the result likely would have been different in several ways. ............................................. 40

  B.  Mr. Wooten can overcome the relitigation bar for this claim. .................... 40

IV.  Mr. Wooten has not claimed factual innocence of the driving while intoxicated. Under Supreme Court and prior Fifth Circuit precedent, that does not preclude this Court from granting relief. .................. 43

Conclusion................................................................ 45

Certificate of Service ................................................... 46

Certificate of Compliance ............................................... 46

## Table of Authorities

**Cases**

*Armstead v. Scott,*
37 F.3d 202 (5th Cir. 1994) ................................................................. 38

*Bousley v. United States,*
523 U.S. 614 (1998) .............................................................. 31, 34

*Bryan v. Brandon,*
228 F. App'x 578 (6th Cir. 2007) ...................................................... 33

*Buck v. Davis,*
580 U.S. 100 (2017) ...................................................................... 44

*Burdine v. Johnson,*
262 F.3d 336 (5th Cir. 2001) (en banc) ............................................ 44

*Clopton v. State,*
408 S.W.2d 112 (Tex.Crim.App.1966) ................................................. 6

*Crawford v. Cain,*
55 F.4th 981 (5th Cir. 2022) ................................................. 43, 44, 45

*Dieter v. Florida,*
759 F. App'x 885 (11th Cir. 2019) ................................................... 25

*Ex parte Evans,*
No. WR-82,154-02, 2014 WL 6476571 (Tex. Crim. App. Nov. 19,
2014) ............................................................................................. 29

*Henderson v. Morgan,*
426 U.S. 637 (1976) ....................................................................... 31

*Herrera v. Collins,*
506 U.S. 390 (1993) ....................................................................... 43

*Hicks v. Franklin,*
546 F.3d 1279 (10th Cir. 2008) ............................................. 35, 36, 37

*Hill v. Estelle,*
653 F.2d 202 (5th Cir. 1981) .................................................. 36

*Johnson v. Zerbst,*
304 U.S. 458 (1938) .............................................................. 31

*Lafler v. Cooper,*
566 U.S. 156 (2012) .............................................................. 44

*Lee v. United States,*
582 U.S. 357 (2017) ......................................................... 42, 44

*Lucio v. Lumpkin,*
987 F.3d 451 (5th Cir. 2021) (en banc) .............................. 27

*McCarthy v. United States,*
394 U.S. 459 (1969) .............................................................. 31

*Moore v. Bryant,*
348 F.3d 238 (7th Cir. 2003) ........................................... 40, 42

*Moore v. Dempsey,*
261 U.S. 86 (1923) ................................................................ 43

*Nelson v. Quarterman,*
472 F.3d 287 (5th Cir. 2006) (en banc) .............................. 44

*Ex parte Parrot,*
396 S.W.3d 531 (Tex. Crim. App. 2013) ............................. 14

*Perez v. Cain,*
529 F.3d 588 (5th Cir. 2008) ............................................... 15

*Peyton v. Rowe,*
391 U.S. 54 (1968) ................................................................ 43

*Phillips v. Mills,*
1999 WL 685925 (6th Cir. 1999) ........................................ 41

*Ramey v. Lumpkin,*
7 F.4th 271 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 1442 (2022) ...................... 15

*Raulerson v. Warden,*
    928 F.3d 987 (11th Cir. 2019) ................................................. 25

*Ex parte Rich,*
    194 S.W.3d 508 (Tex. Crim. App. 2006) .............................. 29

*Robinson v. Woods,*
    901 F.3d 710 (6th Cir. 2018) ................................................. 25

*Ex parte Rodgers,*
    598 S.W.3d 262 (Tex. Crim. App. 2020) ........................ 14, 29

*Ex parte Roemer,*
    215 S.W.3d 887 (Tex. Crim. App. 2007) .............................. 29

*Rompilla v. Beard,*
    545 U.S. 374 (2005) ............................................................... 39

*Ex parte Saucedo,*
    576 S.W.3d 712 (Tex. Crim. App. 2019) .............................. 29

*Sawyers v. Collins,*
    986 F.2d 1493 (5th Cir. 1993) .............................................. 26

*Schillereff v. Davis,*
    766 F. App'x 146 (5th Cir. 2019) ......................................... 35

*Ex parte Serrato,*
    3 S.W.3d 41 (Tex. Crim. App. 1999) ................................. 6, 42

*State v. Wilson,*
    324 S.W.3d 595 (Tex. Crim. App. 2010) .................. 5, 6, 25, 29

*Steward v. Cain,*
    259 F.3d 374 (5th Cir. 2001) ................................................ 27

*Townsend v. Burke,*
    334 U.S. 736 (1948) .........................................................*passim*

*Trice v. Sec., Fla. Dept. of Corr.,*
    766 F. App'x 840 (11th Cir. 2019) ....................................... 26

ix

*United States v. Bui,*
    795 F.3d 363 (3d Cir. 2015) ................................................. 40

*United States v. Guerra,*
    94 F.3d 989 (5th Cir. 1996) ........................................... 36, 39

*United States v. Juarez,*
    672 F.3d 381 (5th Cir. 2012) ............................................... 40

*United States v. Tucker,*
    404 U.S. 443 (1972) ............................................ 16, 18, 21, 32

*Virgil v. Dretke,*
    446 F.3d 598 (5th Cir. 2006) ............................................... 44

*Weaver v. State,*
    87 S.W.3d 557 (Tex. Crim. App. 2002) .................................. 3

*White v. Thaler,*
    610 F.3d 890 (5th Cir. 2010) ............................................... 44

*Ex parte Williams,*
    2020 WL 5540714 (Tex. Crim. App. Sept. 16, 2020) ......................... 26

*Wilson v. Sellers,*
    138 S. Ct. 1188 (2018) ...........................................*passim*

*Wooten v. State,*
    No. 11-16-00250-CR, 2016 WL 5340247 (Tex. App.—Eastland Sept. 22, 2016, pet. ref'd) ................................................. 9

*Ex parte Wooten,*
    11-19-00135-CR, 2019 WL 6001229 (Tex. App. 2019) ..................... 11

*Ylst v. Nunnemaker,*
    501 U.S. 797 (1991) ........................................... 24, 25, 26

## Constitutional Provisions

U.S. Const., amend XIV, § 1 ................................................. 16

## Statutes

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. § 1331 ........................................................................... 1

28 U.S.C. § 2243 .......................................................................... 43

28 U.S.C. § 2253 ........................................................................... 1

28 U.S.C. § 2254 ......................................................................... 12

28 U.S.C. § 2254(d) .............................................................. *passim*

28 U.S.C. § 2254(d)(2) ........................................................... 37, 42

28 U.S.C. § 2255 ........................................................................... 1

Tex. Pen. Code § 12.03 ............................................................... 3

Tex. Pen. Code § 12.04 ............................................................... 3

Tex. Pen. Code § 12.21(2) ........................................................... 3

Tex. Pen. Code § 12.22(2) ........................................................... 3

Tex. Pen. Code § 12.33(a) ........................................................... 4

Tex. Pen. Code § 12.34 ........................................................... 3, 21

Tex. Pen. Code § 12.42 ............................................................... 4

Tex. Pen. Code § 12.42(d) ........................................................... 4

Tex. Pen. Code § 49.04(a) ........................................................... 3

Tex. Pen. Code § 49.04(b) ........................................................... 3

Texas Penal Code § 49.09 ................................................ 31, 36, 37

Tex. Pen. Code § 49.09(a) ........................................................... 3

Tex. Pen. Code § 49.09(b)(2) ....................................................... 3

## Jurisdictional Statement

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1331

and 28 U.S.C. § 2255. This Court has appellate jurisdiction under 28 U.S.C. § 1291

and 28 U.S.C. § 2253. The district court entered written judgment on August 31,

2021. ROA.1099. Mr. Wooten filed a notice of appeal on September 15, 2021.

ROA.1100. That notice was timely. Fed. R. App. P. 4(a)(1)(A).

## Certified Issues for Review

On May 31, 2022, this Court granted Mr. Wooten a Certificate of Appealability

as to whether:

> (1) the state trial court violated his right to due process when it
> predicated the conviction on misinformation and a misreading of
> court records;
>
> (2) [Mr. Wooten]'s plea was unknowing and involuntary because
> trial counsel and the state trial court wrongly advised him about
> the nature of his enhancing conviction, which was an element of
> the offense under Texas law; and
>
> (3) counsel provided ineffective assistance by failing to investigate
> the elements listed in the indictment and failed to correct the trial
> court's obvious error.

Amended Order Granting COA, 5th Cir. ECF Doc. 37-2.

## Statement of the Case

This is an appeal from a judgment ROA.1099 and an accompanying order

ROA.1065–ROA.1098 denying habeas corpus relief to Petitioner Christopher

Wooten. After he pleaded guilty in Texas state court to felony driving-while-intoxicated, the trial court sentenced him to 13 years in prison. ROA.1470. As Respondent conceded below, the offense "charged in the indictment could only have resulted in a conviction for a misdemeanor offense" with a maximum sentence of one year in prison. ROA.639.

### A. Mr. Wooten pleaded guilty to an enhanced felony DWI after the trial court incorrectly informed him that a prior disposition was a final conviction sufficient to satisfy the State's burden to prove felony DWI.

Mr. Wooten entered a felony guilty plea and agreed to a sentence of 13 years in prison based on an indictment that everyone now agrees could—at worst—lead to a conviction for a Class A misdemeanor. ROA.639. Respondent also agrees that everyone should have known this at the time of the plea. ROA.638–ROA.639. Yet, despite Mr. Wooten's repeated requests to examine his so-called "conviction" from 1983, everyone told him he was wrong, and that he faced a felony conviction *as well as* a sentence of 25 years to life if he proceeded to trial on this indictment.

#### 1. Mr. Wooten's indictment purported to charge a felony DWI punishable by a minimum of 25 years and a maximum of life in prison.

The July 2016 state-court indictment lies at the heart of this case. ROA.1435–1436. That document appears to charge a felony driving-while-intoxicated offense, double enhanced to require a sentence of at least 25 years in prison and up to life-in-

prison. In fact, as everyone now agrees, the indictment could only lawfully result in conviction for a misdemeanor. ROA.639.

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Tex. Pen. Code § 49.04(a). If proven at trial, those facts establish a "Class B misdemeanor, with a minimum term of confinement of 72 hours" and a maximum possible sentence of 180 days in confinement.[1] Tex. Pen. Code § 49.04(b); Tex. Pen. Code § 12.22(2). If prosecutors prove that the defendant "has previously been convicted one time of an offense relating to the operating of a motor vehicle while intoxicated," the crime is a Class A misdemeanor, punishable by a minimum of 30 days and a maximum of one year in jail. Tex. Pen. Code § 49.09(a); Tex. Pen. Code § 12.21(2).

And if prosecutors prove that the defendant had *two* prior DWI convictions, the crime is a third-degree felony punishable by 2–10 years in prison. Tex. Pen. Code § 49.09(b)(2); Tex. Pen. Code § 12.34; ROA.1066. The prior DWI convictions are "elements of the offense," so they must be "charged in the indictment, submitted to the jury, and proven by the State beyond a reasonable doubt." *Weaver v. State*, 87 S.W.3d 557, 560 (Tex. Crim. App. 2002). The prior DWI convictions necessary to prove the

---

[1] Texas classifies misdemeanors as Class A, B, or C, with A being the most severe. Tex. Pen. Code § 12.03. A state-jail felony is the next step up, followed by third degree, second degree, first degree, and, ultimately, capital felonies. Tex. Pen. Code § 12.04.

felony offense are sometimes described as "elemental" or "jurisdictional" predicates. *See* e.g. ROA.1066 ("Petitioner's felony indictment alleged two elemental predicate DWI convictions."); ROA.650 (describing these as "jurisdictional DWIs," as distinguished from the separate allegations of "*punishment*-enhancing" felony convictions).

If the State secures a felony conviction at the guilt-innocence phase, it may pursue even more severe penalties under the "Repeat and Habitual Felony Offenders" law. *See* Tex. Pen. Code § 12.42. The habitual-offender statute is not specific to DWI; it could apply to any felony conviction. For a third-degree conviction like felony DWI, proof of one prior felony conviction ("other than a state jail felony") raises the maximum punishment to 20 years in prison rather than 10. Tex. Penal Code § 12.33(a). But if the State proves *two* prior felony convictions at the punishment phase, then the mandatory minimum punishment becomes 25 years (rather than 2 years) and the maximum punishment becomes life in prison. Tex. Pen. Code § 12.42(d).

Mr. Wooten's indictment alleged that he had *three* prior DWI convictions, but only two were identified as *elemental* predicates:

> prior to the commission of the aforesaid offense (hereafter styled the primary offense), on the 21st day of June, 1983, in Cause Number 31,429 in the County Court of Howard County, Texas, the Defendant was convicted of an offense relating to the operating of a motor vehicle while intoxicated, said offense occurring on or about the 14th day of May, 1983,

and on the 23rd day of April, 1986, in Cause Number 34,808 in
the County Court of Howard County, Texas, the Defendant was
convicted of an offense relating to the operating of a motor vehicle
while intoxicated, said offense occurring on or about the 27th day
of January, 1986.

ROA.1435 (Paragraph break inserted for the reader's benefit.).

The indictment also contained notice that, in the event of felony conviction,

the State intended to prove two additional felony convictions at the punishment

phase: a March 31, 1995 conviction for burglary of a habitation in Tarrant County

District Court case 0564652D, and an April 4, 2012 conviction for felony DWI in

Howard County, Texas. ROA.1436.

> **2. In fact, Mr. Wooten was never finally convicted of DWI in Case
> 31,429, and that case could not satisfy the prior-conviction
> element of DWI.**

Everyone now agrees that Case 31,429 was not a "conviction" for DWI that

could elevate the instant offense from "a misdemeanor to a felony." *State v. Wilson*,

324 S.W.3d 595, 598 (Tex. Crim. App. 2010); *see* ROA.1095–ROA.1096 ("Respondent

admits that Petitioner's 1983 predicate offense was not a final conviction and was in-

eligible for use to elevate the challenged conviction.").[2] Under Texas law, for any DWI

offense committed before "January 1, 1984, a DWI conviction on which the sentence

---

[2] The "Probated Judgment" for Case 31,429—"which may have been part of the state-court
record of this case at some point," ROA.1094—explicitly states that "the finding of guilty herein shall
not be final" and "that no judgment" of conviction would issue. ROA.881.

was probated and the probation was never revoked was not deemed final." *Wilson*, 324

S.W.3d at 598–99 (citing *Ex parte Serrato*, 3 S.W.3d 41 (Tex. Crim. App. 1999); *Clopton*

*v. State*, 408 S.W.2d 112 (Tex.Crim.App.1966)). This has been the law in Texas for

"decades." ROA.638.

Thus, if the case had gone to trial, the State would only be able to prove *one*

prior DWI conviction—Case 34,808. That means Mr. Wooten could have been con-

victed of, at most, a Class A misdemeanor. The jury would not even know about Case

13,389 at the guilt-innocence phase.

> **3. The State and Mr. Wooten initially agreed to a plea bargain to unenhanced felony DWI with an eight-year sentence, but the trial judge balked. Everyone finally agreed to a thirteen-year sentence.**

According to Trial Counsel Rick Hamby, the State's initial plea offer was for 25

years in prison. ROA.1433. It is undisputed—but possibly outside the state-court rec-

ord—that Mr. Wooten and the State agreed to an eight-year plea bargain. *See*

ROA.932–ROA.933 (Joint Stipulation in Lieu of Testimony of trial judge Timothy

Yeats)[3]; ROA.2078 at ¶ 4 (Joint Suggestion to Reconsider filed with TCCA). The trial

---

[3] The stipulation was prepared in anticipation of an evidentiary hearing and was part of Mr. Wooten's motion to expand the record below. The district court vacated the evidentiary hearing (ROA.793–ROA.799) and denied the motion to expand the record, ROA.1094–ROA.1096. The original plea agreement was also recorded in a set of notes in the District Attorney's file, *see* ROA.931, but Mr. Wooten was not aware of that document until his attorney discovered it in this federal proceeding.

judge balked at that sentence. ROA.932–ROA.933. It was shorter than the sentence imposed in Case 13,389. ROA.932–ROA.933.

The parties ultimately settled on a plea bargain that the trial court would accept—a sentence of 13 years, which would require proof of two elemental DWI prior convictions and one punishment-enhancing felony conviction. ROA.1648–ROA.1649. The trial court informed Defense Counsel Rick Hamby that it would "honor" that agreement. ROA.1645. And, at least initially, the trial judge would approve the 13-year agreement even if it left Mr. Wooten free to appeal any mistakes about the 1983 DWI.

### 4. At the change-of-plea hearing, the trial judge incorrectly advised Mr. Wooten that his 1983 DWI resulted in a final conviction.

The trial court conducted two change-of-plea hearings. The court interrupted the first hearing after learning that Mr. Wooten had submitted pretrial motions asking for a closer look at the 1983 probated DWI. ROA.926–ROA.927. That hearing was apparently never transcribed before the federal proceedings below. ROA.930 (dated October 27, 2020).

The trial court convened a second hearing on August 29, 2016. ROA.1635. The court and the parties started over, including signing new plea papers. ROA.1643. By

that time, the trial court had reviewed Mr. Wooten's pro se pretrial motions as well as the DWI statute. ROA.1645. Those motions argued that Case 31,429 resulted in a deferred adjudication and that the case was therefore "ineligible for enhancement or for further prosecution" once he completed the probationary term. ROA.1453. In a written order signed that same day, the trial judge stated that he had personally reviewed "the underlying conviction" and determined "that it was not a deferred adjudication." ROA.1480. At the hearing, the trial court specifically, repeatedly, and incorrectly informed Mr. Wooten that case 31,429 did *not* result in a deferred adjudication. ROA.1643; ROA.1645; ROA.1646.

The trial judge was confident enough in this ruling that he was willing to allow Mr. Wooten to reserve his right to appeal. ROA.1642; ROA.1644. Mr. Wooten also informed the court that he wanted to appeal the ruling. ROA.1645. Defense Counsel, the Trial Judge, and even Mr. Wooten all understood that the 13-year plea bargain would allow Mr. Wooten to appeal the court's ruling on the pretrial motions. ROA.1644–ROA.1646. Up until that moment, the State had been represented by an Assistant District Attorney, who did not disagree.

But when Mr. Wooten expressed a desire to appeal, the District Attorney himself intervened in the hearing and attempted to *withdraw* the State's plea offer.

ROA.1645. "If we have to do any appellate work, we might as well go to trial."

ROA.1646.

Trial counsel Rick Hamby never objected to any of this. He did not recognize the truth of Mr. Wooten's assertions about the 1983 DWI; he was oblivious to the facts or the law or both, and did not recognize that "trial" on this indictment would mean either acquittal or (at worst) conviction of a misdemeanor. Rather than investigating the issue further, he "disclaimed" any association with Mr. Wooten's motions: "I would like to make it clear for the record that—that these—the motions that Mr. Wooten has filed were not my motions. They were without my knowledge that they had been filed until very recently." ROA.1654; *see* ROA.1067.

After repeatedly being (mis)informed by the Trial Judge and Defense Counsel that his 1983 was a true conviction capable of enhancing the DWI to a felony, Mr. Wooten acquiesced. He pleaded guilty to felony DWI and "true" to the allegation that he was previously convicted of felony DWI in Case 13,389. ROA.1650. He waived his right to appeal. ROA.1646–ROA.1647. The State waived the punishment-enhancing allegation of the burglary conviction.

The Eleventh Court of Appeals dismissed Mr. Wooten's direct appeal because of the waiver. *Wooten v. State*, No. 11-16-00250-CR, 2016 WL 5340247, at *1 (Tex. App.—Eastland Sept. 22, 2016, pet. ref'd). *See* ROA.1541–ROA.1543.

## B. The state habeas court perpetuated the trial court's error by again failing to recognize that the 1983 DWI was not a proper element of felony DWI.

In Mr. Wooten's first state habeas action challenging his conviction, he argued that the trial court violated his due process rights by entering a conviction Mr. Wooten was not eligible for; that his plea was not voluntary, intelligent, or knowing; and that Rick Hamby provided ineffective assistance of counsel by failing to investigate Mr. Wooten's prior convictions. ROA.1419–1427.[4] The State submitted a one-line general denial—it did not even acknowledge that the trial court was dead wrong when it claimed that Mr. Wooten's 1983 DWI was not a final conviction. ROA.1429. The State also failed to argue that Mr. Wooten's plea was knowing, intelligent, and voluntary despite these errors. Rick Hamby responded to the IAC allegations in an affidavit but also failed to acknowledge that he was wrong about the 1983 DWI. ROA.1433. Instead, Hamby claimed that Mr. Wooten's only desire was to avoid trial because of his "colorful past" and the fear that the jury might hold that against him. ROA.1433.

The trial judge recused himself and a visiting judge made brief findings of fact and conclusions of law. ROA.1430–1432. Describing Mr. Wooten's pleadings as

---

[4] Mr. Wooten filed multiple state habeas applications but only the first one is relevant for purposes of this COA.

mostly "rambling and unintelligible," the habeas court reviewed the record, which included the sentencing court's written ruling that the 1983 DWI was not a deferred adjudication, but found "no evidence" to support any of Mr. Wooten's allegations. ROA.1430–ROA.1432, ROA.1480. Again, the court in charge of Mr. Wooten's case overlooked that his 1983 DWI did not qualify to elevate his 2016 DWI to a felony. The Texas Court of Criminal Appeals denied Mr. Wooten's application without written order on March 24, 2018. ROA.1412. The TCCA did not expressly adopt or reject the findings of the habeas court.

### C. Years after Mr. Wooten commenced federal litigation, the State finally conceded (and the state courts found) that the 1983 DWI was non-final and ineligible to elevate the instant offense to a felony.

In July of 2019, the Howard County Attorney filed a brief in the Eleventh Court of Appeals expressly agreeing that Mr. Wooten was never finally convicted of the 1983 DWI, and that the disposition was "in fact a deferred adjudication." *See* ROA.1876; *see also* ROA.262 (making a similar concession in the district court).

On November 24, 2019, the Eleventh Court of Appeals quoted this concession and agreed. *Ex parte Wooten*, 11-19-00135-CR, 2019 WL 6001229, at *1 (Tex. App. 2019), reprinted at ROA.1882. On May 26, 2020, the Howard County Court granted the state's motion to dismiss that case. 31,429. ROA.751.

**D. The district court denied Mr. Wooten's § 2254 motion by disregarding the state habeas court's findings and applying § 2254(d) deference to its own reasoning.**

Mr. Wooten filed a pro se petition under 28 U.S.C. § 2254 in federal court. The district court initially stayed the habeas proceedings to allow Mr. Wooten's state filings challenging the 1983 DWI to proceed. ROA.351. After lifting the stay, the district court ordered Respondent to file an answer to Mr. Wooten's petition but Respondent moved to again stay the case, claiming that the State intended to seek reconsideration of Mr. Wooten's claims in the TCCA because the State agreed he may be entitled to relief. ROA.445–ROA.455. But the State never bothered to file anything in the TCCA and, four months later, Respondent finally admitted to the district court that the State would not do so. ROA.578–ROA.580. The district court lifted the stay, scheduled an evidentiary hearing, and appointed counsel to represent Mr. Wooten. ROA.596–600.

The district court ultimately cancelled the evidentiary hearing and issued an order denying relief. The court considered three claims filed by Mr. Wooten and "cleaned up" by Mr. Wooten's counsel in an amended petition:

> (1) The trial court violated due process when it predicated Petitioner's conviction or sentence on misinformation or misreading of court records;
>
> (2) Petitioner's plea and affiliated waivers were not knowing and intelligent; and

> (3) Petitioner's trial counsel, Rick Hamby, rendered ineffective as-
> sistance when he failed to investigate no. 31429 [the 1983 DWI]
> and to correct the trial court's erroneous characterization of the
> offense.

ROA.1073. The district court determined that the claims were exhausted and not pro-

cedurally defaulted and thus subject to the § 2254(d) relitigation bar. ROA.1081. All

parties agreed that the habeas court's factual determination—that the trial court made

no error when it determined Mr. Wooten was finally convicted of the 1983 DWI, thus

it was properly an element of the 2016 felony DWI—was unreasonable.[5] ROA.1082.

But the district court decided that it need not ascribe the habeas court's unreasonable

factual determination to the TCCA. ROA.1083. Instead of looking through the

TCCA's order to the trial court's reasoning, as the Supreme Court instructed in *Wilson*

*v. Sellers*, 138 S. Ct. 1188 (2018), the district court determined it should look for any

reasonable alternative the TCCA could have relied on and apply § 2254(d) deference

to that reasoning. ROA.1083.

---

[5] While Respondent agreed that the 1983 DWI alleged in the indictment was not a final conviction and everyone should have known that at the time of the 2016 case, Respondent essentially argued that the error was harmless because Mr. Wooten had another DWI conviction that was final and could have been used as an element of the 2016 felony DWI. ROA.1094. But the State failed to put evidence of the other conviction before the state habeas court and conceded to the federal district court the evidence was available. ROA.1094. Thus, the district court declined to consider that evidence and "retry Petitioner, substituting newly offered, alternative evidence to justify the result." ROA.1094. Petitioner had asked for the opportunity to show that he did not validly waive his right to counsel for that other proceeding.

The district court determined that Mr. Wooten failed to meet the standard under § 2254(d) that the trial court violated his due process rights, that his plea was not knowing and intelligent, or that his counsel provided ineffective assistance. ROA.1084–093. Thus, the court denied relief. This Court granted a COA.

**E. While this appeal was pending, Mr. Wooten and the Howard County District Attorney filed a joint request that the Texas CCA reopen the first state habeas proceeding and grant relief. The state court denied that motion.**

The Texas CCA does not allow motions for rehearing in habeas cases, but parties are permitted to file suggestions that the court rehear a case on its own initiative. In August of 2022, Mr. Wooten and the Howard County District Attorney filed a joint suggestion asking the Texas CCA to reopen the first state habeas proceeding, vacate the judgment, and allow the parties to re-enter their initial plea agreement of 8 years. ROA.2075–2083. The TCCA denied that request without written order on September 6, 2022. ROA.2087. The notification cited two Texas decisions: *Ex parte Rodgers*, 598 S.W.3d 262 (Tex. Crim. App. 2020) and *Ex parte Parrot*, 396 S.W.3d 531 (Tex. Crim. App. 2013). ROA.2087.

## Summary of the Argument

Mr. Wooten urges this Court to vacate the decision below and remand the case back to the district court. The district court agreed that the state habeas *trial* court rendered an unreasonable decision, but then decided without any additional evidence

that the Texas Court of Criminal Appeals would not have made the same mistake. The district court then assumed that the TCCA adopted a *different* set of reasons for denying Mr. Wooten's petition on the merits. No party argued those other reasons in the state proceeding. This was all a way of avoiding the obvious: that all of the lawyers in this case failed to recognize that Mr. Wooten's prior 1983 DWI was never a final conviction.

The state trial court violated Mr. Wooten's federal due process rights in two ways: by entering conviction and imposing sentence based on a misreading or misunderstanding of court records, and by advising Mr. Wooten—incorrectly—that his 1983 probationary judgment met the State's burden of proving a final "conviction" for purposes of felony DWI. Trial counsel Rick Hamby did nothing to stop this error and in fact disclaimed any involvement in Mr. Wooten's argument. The prosecutor, the defense attorney, and the trial judge all harbored mistaken assumptions about the 1983 DWI. Mr. Wooten is entitled to relief.

## Argument

### Standard of Review

"In a habeas appeal, this court reviews legal conclusions de novo and factual findings for clear error." *Ramey v. Lumpkin*, 7 F.4th 271, 278 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1442 (2022) (citing *Perez v. Cain*, 529 F.3d 588, 593 (5th Cir. 2008)).

## I. The state trial court violated Mr. Wooten's right to due process when it predicated his conviction and sentence on misinformation and a misreading of court records.

If a state court imposes a sentence predicated on "false assumptions" about a defendant's criminal record, the state has denied that defendant due process of law and the "conviction cannot stand." *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447–49 (1972) (Where a defendant's sentence was "founded at least in part upon misinformation of constitutional magnitude," and the sentence "might have been different if the sentencing judge had known" facts made evident by court action years later, the defendant is entitled to habeas relief.).[6] Here, it is undisputed that the trial court misread court records and predicated both the conviction and sentence on materially untrue assumptions about Mr. Wooten's criminal history. "It is not the duration or severity of this sentence that renders it constitutionally invalid." *Townsend*, 334 U.S. at 741. The problem arises because the decisionmaker predicated the conviction and sentence "on misinformation or misreading of court records." *Id.*

---

[6] The Fourteenth Amendment provides, in pertinent part:

"No State shall make or enforce any law which shall abridge the privileges or im-munities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law*; nor deny to any person with-in its jurisdiction the equal protection of the laws."

U.S. Const., amend XIV, § 1 (emphasis added).

## A. The district court found that the Texas Court of Criminal Appeals denied Mr. Wooten's due process claims on the merits.

The District Court found that Mr. Wooten "fairly presented his due process claims to the [Texas Court of Criminal Appeals]." ROA.1081. The TCCA denied the claim "on the merits," ROA.1081, in a decision issued on March 14, 2018. ROA.1412. In July of 2019, the Howard County Attorney filed a brief in the state Court of Appeals expressly agreeing that Mr. Wooten was never finally convicted of the 1983 DWI, and that the disposition was "in fact a deferred adjudication." *See* ROA.1876; *see also* ROA.262 (making a similar concession in the district court).

Obviously, the state habeas court did not have the benefit of these concessions and rulings. But Respondent argued below that these developments were immaterial, and the district court largely agreed. As the district court recognized, "longstanding, well-established, and clearly drawn state law defined Petitioner's completed 1983 probation as a deferred adjudication, rather than a final conviction, and rendered it ineligible for use to enhance or elevate any future offense. It is undisputed that the trial court was unreasonable in finding otherwise." ROA.1083.

There is an argument that the post-2018 developments were significant enough to give rise to new "claims" that were not adjudicated on the merits in the original TCCA decision. Section 2254(d) wouldn't apply, but neither would § 2254(e)(2) or procedural default. Mr. Wooten cannot be blamed for state officials' dragging-of-feet

before finally acknowledging the truth. *Cf. Tucker*, 404 U.S. at 444–45 (discussing a due process/misinformation claim that ripened "[s]everal years" after the conviction because state courts vacated the predicate convictions).

## B. The last reasoned decision in state court is factually and legally indefensible.

If the state courts decided the due process claims on the merits, Mr. Wooten must overcome the relitigation bar in 28 U.S.C. § 2254(d). In other words, he must

> show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). Where a state's highest court has rendered a merits decision without describing its reasoning, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Here, the Texas CCA rendered a summary decision on Mr. Wooten's first state habeas application. The application was "denied without written order" on March 14, 2018. ROA.1412; *see* ROA.1081, ROA.1087. "[T]he last related state-court decision" is the "Trial Court's Findings of Fact and Conclusions of Law," issued October 10, 2017.

ROA.1430–1432. The trial court found "no evidence" to support Mr. Wooten's "allegations" that the trial judge misread court records, misunderstood the nature of the 1983 guilty plea, violated the federal Constitution, or "acted improperly in any manner." ROA.1431–1432.

Respondent did not defend this decision below. The district court didn't either. In the original criminal proceedings, the state trial judge personally "review[ed] the underlying conviction" and still found that it was a final conviction, "not a deferred adjudication." ROA.1480. The state trial judge repeatedly informed Mr. Wooten and the attorneys about this finding. ROA.1640; ROA.1645.

Everyone agrees that these rulings and admonishments were mistaken and unreasonable. They contradicted "well-established and clearly drawn state law." ROA.1087. Mr. Wooten informed the court that he had been sentenced to misdemeanor probation in 1983, and the trial judge personally reviewed the 1983 "Probated Judgment." That document plainly states that the "finding of guilty herein shall not be final, and no judgement be rendered thereon." ROA.881. More importantly, the document imposes a *probationary* term for a pre-1984 misdemeanor DWI. The trial court could only find this to be a "final" conviction if it misread the record.

During state habeas review, *another* trial judge reviewed the record and *made the same mistake*. ROA.1430–1432. Those habeas findings "do not address or acknowledge

the mistaken reliance on the 1983 predicate." ROA.1087. Instead, the habeas trial judge found that there was "no evidence" to substantiate the claim of constitutional error and concluded that the trial judge did nothing wrong. This decision satisfies *both* criteria found in § 2254(d).

> **1. The trial court's habeas decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."**

The state trial court misread the relevant conviction records and therefore harbored "false assumptions" about Mr. Wooten's "criminal record." *Townsend*, 334 U.S. at 741. "Such a conviction cannot stand." *Id.* The State has since admitted that the conviction was never final and could not be used to elevate the 2016 crime to a felony. The State even dismissed the 1983 case, as it should have done as soon as he completed probation.

Without the false assumptions about the 1983 disposition, the result of the 2016 proceedings would surely be different. Absent that mistake, the trial judge had no authority to accept the felony plea, to enter conviction for a second-degree felony, and to impose a sentence of 13 years. The indictment could only support a conviction for a Class A misdemeanor with a maximum sentence of one year in jail. There may be an argument that the trial court could enter judgment for a third-degree felony if it used the penalty-phase admission about the 2012 DWI as an elemental predicate. But

that would leave the record devoid of any punishment-enhancing felonies. The maximum sentence for a third-degree felony is ten years in prison. Tex. Pen. Code § 12.34. The court could not sentence Mr. Wooten to 13 years. Given the State's willingness to accept a plea bargain with a maximum sentence of 8 years, there is no reason to think that anyone would have insisted on more than 10 if this fact had been recognized at the time.

A trial judge cannot predicate a defendant's conviction or sentence on a misreading of a defendant's criminal record. Yet, that is exactly what happened here; the state court's contrary decision was either "contrary to" or "an unreasonable application of" *Townsend*, 334 U.S. at 741, *Tucker*, 404 U.S. at 447–49.

### 2. The trial court's habeas decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Mr. Wooten pleaded guilty to DWI in 1983, and he was placed on probation. He completed that probation without being revoked. His guilty plea never ripened into a final conviction. Mr. Wooten repeatedly and correctly asserted these facts as often as possible.

Admittedly, the TCCA made its March 14, 2018, decision without the benefit of the subsequent confession of error. It is not clear whether the TCCA had access to the 1983 Probated Judgment. But the trial court certainly did. At the time of the guilty

plea hearing, the trial judge "review[ed] the underlying conviction," ROA.1480, and the federal district court found that the probated judgment "may have been part of the state-court record of this case at some point." ROA.1094. The "Probated Judgment" itself—ROA.881—does not show up anywhere in the state habeas court record filed below for Texas CCA Case Number WR-64,526-04. *See* ROA.1412–ROA.1657.

The March 2018 decision also came before the November 14, 2019, appellate decision holding that Case 31,429 should be dismissed, *see* ROA.1881–1884, and the May 26, 2020, order dismissing the case, *see* ROA.751.[7] Even so, Mr. Wooten explained *numerous* times that he "successfully completed deferred adjudicated probations" on his 1983 misdemeanor DWI, which was therefore "non-final." E.g. ROA.1423. There was no evidence to contradict these assertions, and Respondent has never argued that the state habeas court could *reasonably* conclude that Mr. Wooten was sentenced to jail time rather than probation, or that his probation was revoked, or that the 1983 conviction was for a post-1984 offense.

---

[7] Mr. Wooten returned to state court and cited those decisions. *See* ROA.1967, ROA.1989–1991. He exhausted his remedies regarding the new developments, but those attempts were dismissed without addressing the merits.

The district court recognized that the "trial court's findings during the state habeas review do not address or acknowledge the mistaken reliance on the 1983 predicate." ROA.1087. The court also recognized that this was "unreasonable" and a "mistake." ROA.1087–1088.

### 3. Respondent has not rebutted the presumption that the Texas CCA adopted the unreasonable trial-court decision.

A federal court must "presume" that a state supreme court's "unexplained decision adopted the same reasoning" as the last reasoned decision in a lower court. *Wilson v. Sellers*, 138 S. Ct. at 1192. State supreme courts are incredibly busy; they often "write 'denied' or 'affirmed' or 'dismissed' when they have examined the lower court's reasoning and found nothing significant with which they disagree." *Id.* at 1194. In general, a federal habeas court should not try "to imagine what might have been the state court's supportive reasoning" when it is obvious or more likely that the court simply adopted the reasoning of a trial court. *Id.* at 1195.

The presumption that the high court adopted the reasoning below is rebuttable, rather than conclusive. *Wilson*, 138 S. Ct. at 1195. The parties to the federal litigation could

> rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance *that were briefed or argued to the state supreme court or obvious in the record it reviewed.*

23

*Wilson*, 138 S. Ct. at 1192 (emphasis added). The Supreme Court specifically warned that a federal habeas court cannot use a state supreme court's silence as a license to supply its own "persuasive" reasoning:

> Where there are convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary. In our view, this approach is more likely to respect what the state court actually did, and easier to apply in practice, than to ask the federal court to substitute for silence the federal court's thought as to more supportive reasoning.

*Id.* at 1197.

Here, the district court refused to "look-through" the TCCA's decision primarily because the lower court's decision was unreasonable. ROA.1087–1088. Petitioner agrees that "the unreasonableness of the lower court's decision itself provides some evidence that makes it less likely the state supreme court adopted the same reasoning." *Wilson*, 138 S. Ct. at 1196. But in this case, that is not sufficient to overcome the presumption.

A party may rebut the presumption by pointing to "*strong* evidence that the presumption, as applied, is wrong." *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). While the unreasonableness of the lower court decision provides "some evidence that makes it less likely" that the state appellate court decision rests

on the same grounds, the Supreme Court suggests more is needed to rebut the presumption. *Wilson*, 138 S. Ct. at 1196. In *Ylst*, the Court gave as an example "that even though the last reasoned state-court opinion had relied upon a procedural default, a retroactive change in the law had eliminated that ground as a basis of decision, and the court which issued the later unexplained order had directed extensive briefing limited to the merits of the federal claim." 501 U.S. at 804. *Wilson* similarly explained that a party may rebut the presumption by demonstrating that "convincing alternative arguments" were made to the state's highest court or a "valid ground for affirmance" was "obvious" from the record. 138 S. Ct. at 1196. These examples demonstrate that there must be actual, convincing evidence that the appellate did not adopt the lower court's reasoning to overcome the presumption.

The presumption was not rebutted here. First, Respondent did not even attempt to argue that the TCCA relied on different reasoning than the trial court. ROA.617–665. Courts apply "look through" when no party attempts to rebut the presumption. *See*, e.g., *Raulerson v. Warden*, 928 F.3d 987, 996 (11th Cir. 2019) ("But we 'presume' that the summary denial adopted the superior court's reasoning unless the state 'rebut[s] the presumption' . . ., which the state has not tried to do in this appeal."); *Robinson v. Woods*, 901 F.3d 710, 714 n.2 (6th Cir. 2018) (same); *Dieter v. Florida*, 759 F. App'x 885, 890 n.5 (11th Cir. 2019) (same).

Second, there is no evidence suggesting that the TCCA would not adopt the lower court's erroneous reasoning. The State made no alternative arguments to defend the conviction. In response to Mr. Wooten's habeas application, the State simply issued a general denial and advanced none of the arguments the federal district court ultimately relied on. ROA.1429. Thus, nothing suggests these arguments were on the TCCA's radar. *See Wilson*, 138 S. Ct. at 1196; *see also Trice v. Sec., Fla. Dept. of Corr.*, 766 F. App'x 840, 849 (11th Cir. 2019) (holding "look through" did not apply when the State argued to the appellate court that the lower court's reasoning was faulty and advanced an alternative argument). And Mr. Wooten's case does not present a scenario where a change in the law provides a reasonable alternative for the TCCA's ruling. *See Ylst*, 501 U.S. at 804; *Sawyers v. Collins*, 986 F.2d 1493, 1500 (5th Cir. 1993) (holding very recent TCCA decision provided "strong evidence" to rebut *Ylst* presumption). Nor did the TCCA specifically reject the habeas court's findings, as it often does when it affirms on alternative grounds. *See, e.g., Ex parte Williams*, 2020 WL 5540714, at *2 (Tex. Crim. App. Sept. 16, 2020). At the post-conviction stage, the trial court described Mr. Wooten's pro se briefing as "rambling" and gave it no credence. ROA.1430. The trial judge had stated on the record that it had personally reviewed the conviction and that Mr. Wooten was wrong about the nature of the disposition. The state habeas

court then decided, unreasonably, that Mr. Wooten "failed to show that Judge Yeats acted improperly in any manner." ROA.1432.

There is nothing to suggest that the TCCA viewed Mr. Wooten's case any differently.

The presumption applies "unless there is some significant, meaningful indication" that the higher court did not adopt the lower court's reasoning. *See Steward v. Cain*, 259 F.3d 374, 377 (5th Cir. 2001); *see also Lucio v. Lumpkin*, 987 F.3d 451, 465 (5th Cir. 2021) (en banc) ("To that end, the Supreme Court says that we must 'train [our] attention' on the 'last related state-court decision' that provides a 'relevant rationale' to a particular claim. Only then can we consider whether the state court's 'decision' was contrary to or an unreasonable application of clearly established Supreme Court precedent.") (internal citation omitted).

The district court concluded the TCCA did not adopt the trial court's findings solely because the findings were unreasonable and wrong. ROA.1080–ROA.1088. That would make the "look through" process entirely superfluous and would deprive federal courts of the benefits that led the Supreme Court to adopt the presumption in the first place.

The trial court made an unreasonable factual determination and misapplied Supreme Court precedent. The decision was central to resolving Mr. Wooten's habeas

application. With no "strong" evidence to rebut the presumption that the TCCA adopted the same reasoning, the district court should have applied "look through," and determined the state court acted unreasonably under 28 U.S.C. § 2254(d).

## C. There is no evidence to suggest that the TCCA adopted the district court's alternative waiver analysis.

The district court recognized that the state *trial court*'s decision was unreasonable but decided that the TCCA might have adopted a more persuasive rationale: waiver. ROA.1084–1085. It then deferred to its own rationale.

### 1. There is no evidence that the TCCA applied a waiver analysis.

Critically, the district court cited no evidence that the TCCA *would have* or *likely did* adopt the waiver rationale. But because it was a *possible* rationale, and the district court found it persuasive, the court reviewed that reasoning rather than the rationale of the state trial court. Section 2254(d) does not "ask the federal court to substitute for silence the federal court's thought as to more supportive reasoning" *Wilson*, 138 S. Ct at 1197.

### 2. The TCCA routinely rejects the waiver argument in materially identical circumstances.

In fact, TCCA precedent and practice strongly support the opposite inference. Texas allows prisoners to raise freestanding "actual innocence" and "illegal sentence"

claims on habeas corpus review, and many of those cases arise from faulty DWI indictments similar to this one. In that closely related context, the TCCA has repeatedly addressed the merits of the post-conviction challenge and rejected waiver and estoppel arguments grounded in the defendant's acceptance of a plea agreement. *See State v. Wilson*, 324 S.W.3d 595, 599–600 (Tex. Crim. App. 2010); *see also Ex parte Saucedo*, 576 S.W.3d 712, 716 (Tex. Crim. App. 2019) (discussing *Wilson*); *Ex parte Rodgers*, 598 S.W.3d 262, 264–65 (Tex. Crim. App. 2020) (reviewing the merits of a post-conviction challenge to DWI predicates despite a plea agreement); *Ex parte Evans*, No. WR-82,154-02, 2014 WL 6476571, at *1 (Tex. Crim. App. Nov. 19, 2014) (recognizing that a habeas applicant who had accepted a plea agreement nonetheless "alleged facts that, if true, might entitle him to relief" where one predicate conviction had been vacated and others were too remote to elevate the current DWI to a felony); *Ex parte Roemer*, 215 S.W.3d 887, 890 (Tex. Crim. App. 2007) (rejecting estoppel and waiver arguments because the defendant was induced to plead guilty to an aggravated offense and to agree to a sentence the predicate convictions could not lawfully support); *Ex parte Rich*, 194 S.W.3d 508, 515 (Tex. Crim. App. 2006) ("Although the plea bargain seemed fair on its face when executed, it has become unenforceable due to circumstances beyond the control of the Applicant or the State, namely the fact that one of the enhancement

paragraphs was mischaracterized in the indictment, resulting in an illegal sentence far outside the statutory range of punishment.").

### 3. In all likelihood, the TCCA trusted and relied on the trial court to figure out the facts.

The simplest explanation is usually the best. In this case, the TCCA probably trusted the Howard County District Court to correctly determine whether Mr. Wooten was correct when he asserted that he had been sentenced to an unrevoked probationary term for his 1983 misdemeanor DWI. The trial court unreasonably determined that the answer was negative, and nothing Mr. Wooten said could persuade anyone to take a closer look at the issue.

## II. Mr. Wooten's guilty plea and associated waivers were tainted by misadvice about the nature of the 1983 DWI disposition.

At Mr. Wooten's change-of-plea hearing, the trial court informed him that his 1983 DWI was not a deferred adjudication and that it therefore it would count as one of the two prior DWI convictions necessary to prove felony DWI. ROA.1640, ROA.1645. The court overruled Mr. Wooten's pretrial motions and informed him that he was properly subject to a 25–life punishment range on the indictment. ROA.1638. Because the court misinformed Mr. Wooten about an essential element of his felony conviction, and predicated Mr. Wooten's conviction on that misinformation, the trial court violated Mr. Wooten's due process rights.

For a guilty plea to be valid under the Due Process Clause, "it must be 'an intentional relinquishment or abandonment of a known right or privilege.'" *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A guilty plea "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* In *Bousley*, the Supreme Court held that the petitioner's guilty plea was not voluntary when a Supreme Court decision handed down after the petitioner's plea demonstrated that the district court had misinformed the petitioner as to an element of the offense. 523 U.S. at 618. The Court held that when "neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," the plea is "constitutionally invalid." *Id.* at 618–19; *see also Henderson v. Morgan*, 426 U.S. 637, 647 (1976) (holding plea involuntary when trial court and defense counsel failed to explain intent element of offense).

The two people primarily responsible for explaining "the nature of" the offense to Mr. Wooten—the trial court and his defense attorney—failed to do so. The record of the plea plainly reveals that the trial court incorrectly admonished Mr. Wooten about the elements of the offense to which he was pleading guilty—that the 1983 DWI would satisfy the prosecution's burden of proving a "conviction" under Texas Penal Code § 49.09 because it was not a deferred adjudication. There are only a few explanations

for this: the trial court misread the court records, did not understand the law, or lied to Mr. Wooten. None of those scenarios can save the plea. And defense counsel said nothing to correct the judge. In fact, defense counsel disclaimed any involvement in Mr. Wooten's motion. Even at the post-conviction stage, the state habeas court, the prosecution, and the trial defense attorney all proceeded as though Mr. Wooten *had been* convicted of a qualifying DWI in 1983.

### A. This claim overcomes the re-litigation bar for many of the same reasons the *Townsend* claim overcomes the bar.

The district court determined Mr. Wooten failed to surpass the § 2254(d) relitigation bar despite the trial court's critical error because Mr. Wooten "understood the true nature of the charges against him," "believed that [the 1983 DWI] was not a final conviction," but pleaded guilty and waived appeal anyway. ROA.1086. But that completely ignores the pernicious effects of the trial court's faulty admonishment.

Mr. Wooten's decision to plead guilty and waive appeal cannot be separated from the trial court's misinformation about the 1983 DWI and its use as an element of the felony case. The Sixth Circuit has rejected the argument that guilty-plea convictions and sentences are exempt from scrutiny under *Tucker* and *Townsend*:

> Respondent asserts that the circumstances found to be constitutionally repugnant in *Townsend* and *Tucker* simply do not exist in this case, because the sentence is actually "based" on the guilty plea rather than any previous information. Respondent's reading of *Townsend* and *Tucker*, however, is flawed. Although the facts of

> both cases differ somewhat from those at issue here, both cases
> stand for the proposition that *a sentence imposed on the basis of an
> erroneous conviction is constitutionally invalid.*

*Bryan v. Brandon*, 228 F. App'x 578, 579 (6th Cir. 2007) (emphasis added). The court

went on to affirm the grant of habeas relief for a prisoner whose state sentence was

enhanced based upon prior convictions that were later vacated. *Id.* at 584.

The district court also concluded that Mr. Wooten waived this issue by accept-

ing the plea because Mr. Wooten knew his own criminal history.[8] ROA.1085. Mr.

Wooten plainly demonstrated that he had no interest in accepting the 13-year plea

offer if the 1983 DWI would not elevate the instant offense to a felony. Because a

defendant is entitled to correct advice about how the law applies to undisputed facts,

a defendant's suspicion that a trial judge might be incorrect does not make the plea

intelligent. In fact, when the defendant asks such a specific question and the trial judge

gives such a specific answer in response, the defendant should be entitled to trust that

the judge is correct.

The district court reasoned that Mr. Wooten knew the 1983 DWI could not be

an element of the felony, knew the trial court's legal conclusion was wrong, and still

---

[8] The district court claimed it did not consider any evidence not submitted to the state habeas court but made oblique reference to a third misdmeanor DWI in denying this claim. ROA.1085–1086. As Mr. Wooten argued below, if the Courts would open the record to consider an additional alleged conviction, then Mr. Wooten should have the opportunity to explain why that conviction could not be used to elevate his offense to a felony. He was prepared to present evidence that his waiver of the right to counsel in the other case was involuntary.

pleaded guilty and waived appeal anyway. The record does not support that conclusion.

Aside from that, the re-litigation analysis of the second due process claim largely mirrors the analysis discussed above. All of the lawyers involved in the case incorrectly concluded and asserted that the 1983 conviction was final, and on *that* basis the state court denied postconviction relief. That basis was unreasonable.

## B. The trial court, defense counsel, and the prosecution gave flatly incorrect advice about the way Texas DWI law applies to undisputed facts in the case.

"[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998). Everyone involved informed Mr. Wooten that his 1983 DWI indisputably qualified as an element for the felony DWI offense and that he was subject to a 25–life punishment range. Faced with this advice from the court, strong-arm tactics from the prosecution, and apathy from his own defense counsel, Mr. Wooten entered a guilty plea and waived his appellate rights. His plea and waiver were not knowing and intelligent.

The district court determined that Mr. Wooten failed to overcome the § 2254(d) relitigation bar because he knew his 1983 DWI was a deferred adjudication

but chose to "avoid trial and take bird-in-hand, which guaranteed a reduced sentencing exposure." ROA.1086. Relying on *Schillereff v. Davis*, 766 F. App'x 146, 153 (5th Cir. 2019), the district court reasoned that a state court does unreasonably reject a guilty plea claim even when the trial court misinformed the defendant of the range of punishment if the defendant knew the actual range he was facing. ROA.1088. There are many critical distinctions between *Schillereff* and this case. First, in *Schillereff* the misadvice concerned the maximum possible sentence the court could impose, not the elements of the underlying crime or the proof necessary to meet the State's burden. Second, the trial court there sentenced the defendant under the correct range. Third, the record revealed that the plea papers Schillereff signed the same day as the guilty plea stated his correct sentencing range; the only discrepancy was a separate oral admonishment. 766 F. App'x at 152. Fourth, the postconviction record showed that the trial defense counsel correctly understood and admonished the defendant about the correct range that applied to the facts of his case. None of that is the case here. Everyone informed Mr. Wooten that his 1983 DWI would properly satisfy the State's burden of proving one of two prior DWIs. and nothing in the record shows anyone providing him correct advice.

This case is much more similar to *Hicks v. Franklin*, 546 F.3d 1279, 1285 (10th Cir. 2008). The Tenth Circuit held that a petitioner overcame § 2254(d) when the

trial court misstated the law about an element of the offense during the guilty plea hearing and the record offered no evidence that defense counsel corrected the error. "Mr. Hicks' plea could not have been voluntary because the court provided him with an incorrect understanding of the law in relation to the facts of his case." *Id.* at 1287. The Court explained that Mr. Hicks cleared the relitigation bar because "[i]t is a rare circumstance to have a critical element of the charge completely misstated by the trial court. This case simply happens to present that rare situation." *Id.* at 1287 n.6.

There is not only a reasonable probability, but a near certainty, that Mr. Wooten would not have pleaded guilty to felony DWI had he been correctly advised about the "nature" of § 49.09 in relation to his 1983 DWI. He certainly would not have signed the written stipulation asserting that he had been "convicted" of that crime, and he would not have waived appeal. His pretrial motions demonstrate as much. On the indictment, Mr. Wooten only faced misdemeanor punishment. But he was led to believe that if he did not plead guilty and waive his appellate rights, he faced up to life imprisonment. A plea cannot be knowing and intelligent when the defendant does not know the potential penalty or understand an element of the offense. *See United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (holding plea involuntary when trial court and prosecution informed defendant of erroneous punishment range and defense counsel failed to correct it); *Hill v. Estelle*, 653 F.2d 202, 205 (5th Cir. 1981)

("Total ignorance of the outer limits of the penalty the defendant could suffer renders the plea invalid under due process. The outer limits must be precisely, and not just substantially, known.") (internal citations omitted).

The district court concluded that Mr. Wooten knew he did not qualify for conviction under the indictment but pleaded guilty and waived appeal anyway to avoid a worse outcome. ROA.1086. Accepting the district court's reasoning would mean that even though Mr. Wooten knew the trial court's legal conclusion was wrong about the 1983 DWI, meaning he would have known that a worse outcome was impossible, he waived his rights in exchange for no benefit. That is illogical and unsupported by the record. This was not a knowing, rational, fully informed choice to plead guilty. The record shows he would accept this plea only if the 1983 DWI satisfied the State's burden to prove guilt under § 49.09. The court misadvised him, and he pled guilty in response.

The state habeas court's contrary decision was unreasonable. If, as the record demonstrates, the TCCA rejected Mr. Wooten's arguments because it accepted the habeas court's conclusion that the trial court made no error, it made an unreasonable determination of fact. *See* 28 U.S.C. § 2254(d)(2). But even if the TCCA ruled on alternative grounds, as the district court suggests, it unreasonably applied clearly established federal law. *See Hicks*, 546 F.3d at 1284–85 (holding petitioner overcame

§ 2254(d)(1) when trial court misinformed him as to a critical element of the offense, defense counsel failed to correct the error, and he did not receive correct information from another source).

## III.  Mr. Wooten's defense counsel rendered ineffective assistance of counsel.

Texas practitioners have known "for decades" that a pre-1984 misdemeanor DWI probation is a non-final disposition, and it cannot be used to elevate a misdemeanor DWI to a felony. ROA.638. But Rick Hamby was apparently the exception to the rule. He either did not know that under Texas law a probated sentence did not qualify as a final conviction, or he did not know that Mr. Wooten's 1983 DWI resulted in a probated sentence, which meant that it was not a final conviction. Either way, he failed to investigate and his failure prejudiced Mr. Wooten's case.

Because he entered a guilty plea, Mr. Wooten must show two things to establish that Rick Hamby provided ineffective assistance of counsel and that he suffered prejudice as a result: (1) that Hamby's performance fell below the standards of reasonably competent representation, and (2) that Mr. Wooten would not have pleaded guilty but for Hamby's error. See *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

Trial counsel had a duty to investigate the prior convictions the State would rely on to prove guilt of the felony DWI and at the punishment phase. "It flouts prudence to deny that a defense lawyer should try to look at a file he knows the prosecution will

cull for aggravating evidence, let alone when the file is sitting in the trial courthouse, open for the asking." *Rompilla v. Beard*, 545 U.S. 374, 389 (2005). Counsel was "under a duty to prevent the court from proceeding on such false assumptions" about a defendant's criminal record, "and perhaps under a duty to seek remedy elsewhere if they persisted." *Townsend*, 334 U.S. at 740–41.

Trial counsel had a duty to investigate these matters, even if Mr. Wooten had expressed a desire to plead guilty. ABA Standards for Criminal Justice 4-4.1(b), (c). The record leaves no doubt that Hamby did not investigate whether the 1983 DWI was a final conviction eligible to enhance the instant offense to a felony.

Counsel's actions at the plea hearing and his affidavit during the state habeas proceedings belie any suggestion that he was aware that the 1983 DWI was not a final conviction. If he had known, he surely would have said something when the trial court misadvised Mr. Wooten. *See Guerra*, 94 F.3d at 995 ("Had [defense counsel] realized the district court's error, one would hope he would have brought it to the court's attention."). Had he known, he presumably would not have allowed Mr. Wooten to waive his right to appeal. And he surely would have said something when preparing an affidavit in response to Mr. Wooten's allegations that he provided ineffective assistance by not investigating and not correcting the matter. He didn't. ROA.1433.

## A. If Hamby had done his job, the result likely would have been different in several ways.

Hamby's utter failure to investigate, which led to his failure to properly advise Mr. Wooten of the correct sentencing range and to correct the trial court's error, was deficient performance. *See United States v. Juarez*, 672 F.3d 381, 389 (5th Cir. 2012) (finding deficient performance when counsel "simply failed to investigate the law" and deprived the defendant of the opportunity to assert a viable defense); *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003) (holding deficient performance prong is met where "erroneous advice is provided regarding the sentence likely to be served if the defendant chooses to proceed to trial, and that erroneous advice stems from the failure to review the statute or caselaw that the attorney knew to be relevant"); *United States v. Bui*, 795 F.3d 363, 376 (3d Cir. 2015) ("When addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer.") (internal quotation omitted).

## B. Mr. Wooten can overcome the relitigation bar for this claim.

The district court determined Mr. Wooten failed to overcome § 2254(d) for his ineffective assistance claim because the state court might reasonably have concluded that Mr. Wooten was so singularly determined to plead guilty—no matter the consequences of conviction at trial—that Hamby's utter failure to investigate had no impact. ROA.1092. In Hamby's affidavit—where he ignored the allegation that he missed the

critical 1983 DWI issue—Hamby claimed Mr. Wooten wanted to avoid trial because of the way a jury might react to Mr. Wooten's "colorful past." ROA.1433. But the record clearly shows that Mr. Wooten's desire to avoid felony conviction if the 1983 predicate was insufficient. He wanted to challenge the indictment and protect his appellate rights. He only faltered when the trial court and his own defense counsel told him he was wrong about the 1983 conviction, and he would face a mandatory minimum of 25 years and a maximum of life in prison if he did not take the deal. *See Phillips v. Mills*, 1999 WL 685925, at *6 (6th Cir. 1999) (holding that even though "Phillips stated several times that he wanted to plead guilty at the hearing," he established he would not have pled guilty but for counsel's errors when counsel completely failed to investigate). Mr. Wooten's persistence in attempting to protect himself from a felony conviction predicated on a non-final conviction demonstrates that he would not have pleaded guilty nor waived his rights had defense counsel vindicated the truth.

The district court also reasoned that Rick Hamby's deficient investigation and advice did not prejudice Mr. Wooten because the trial court denied Mr. Wooten's pro se pretrial motions—meaning that the court also would have denied the motion had Hamby made it. ROA.1092–ROA.1093. This analysis is wrong for several reasons. First, the court ignored an important part of the prejudice inquiry. The question is not merely whether the motion would have been successful, but whether the result of

the proceeding would have been different. If anyone had confirmed for Mr. Wooten that the 1983 DWI would not qualify, he would not have pleaded guilty and he would not have waived his right to appeal. *See Lee v. United States*, 582 U.S. 357, 364 (2017) (explaining that prejudice inquiry has nothing to do with whether counsel would have been successful but for the deficient performance, thus a defendant can show prejudice even when he had no viable trial defense if he would not have pleaded guilty). Second, the district court seemed to have ignored the possibility that Hamby could have presented the facts and law in an organized, persuasive fashion. He could have reminded the trial judge and the prosecutor that the prosecutor had been willing to offer a plea with an eight-year sentence and explained that this agreement would better fit the facts and law. And had Hamby preserved the issue, Mr. Wooten certainly would have been vindicated on appeal. *See Ex parte Serrato*, 3 S.W.3d 41, 43 (Tex. Crim. App. 1999).

Again, the state habeas court determined that there was no error at all with regard to the 1983 DWI, which was an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). But even if the TCCA applied alternative reasoning, then Hamby's failure to investigate and defend as to an essential element was deficient performance. If the state court found otherwise, it misapplied clearly established federal law. *See Moore v. Bryant*, 348 F.3d 238, 243 (7th Cir. 2003) (holding state court acted

unreasonably when it determined the defendant would have pleaded guilty anyway when defense counsel wrongly advised the defendant as to the sentencing range).

## IV. Mr. Wooten has not claimed factual innocence of the driving while intoxicated. Under Supreme Court and prior Fifth Circuit precedent, that does not preclude this Court from granting relief.

Under Title 28, Section 2243 of the United States Code, a federal court presiding over a habeas corpus case "shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. In December 2022, a panel of this Court decided *Crawford v. Cain*, 55 F.4th 981 (5th Cir. 2022). Part III of that decision appears to announce an interpretation of § 2243 that requires *all* habeas petitioners to prove "factual innocence." *Crawford*, 55 F.4th at 992–96.

This provision is not new. It has been on the books in its present form since 1946, and the "law and justice" language goes back to 1874. *Peyton v. Rowe*, 391 U.S. 54, 66–67, (1968) (quoting Rev. Stat. § 761 (1874)). If part III of *Crawford* is correct, then the true meaning of that statutory language somehow eluded courts for more than 140 years. Part III of *Crawford* directly conflicts with binding Supreme Court and Fifth Circuit precedent. *See Moore v. Dempsey*, 261 U.S. 86, 87–88 (1923) ("[W]hat we have to deal with is not the petitioners' innocence or guilt but solely the question of whether their constitutional rights have been preserved."); *Herrera v. Collins*, 506 U.S.

390, 400–01 (1993) ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.").

*Crawford* seemed to overlook countless cases in which the Supreme Court extended habeas relief to defendant who did not assert their innocence or even outright admitted guilt. *See*, e.g., *Lee*, 582 U.S. at 364 (Ineffective assistance resulted in a guilty plea instead of a trial.); *Lafler v. Cooper*, 566 U.S. 156, 164–74 (2012) (Ineffective assistance resulted in a trial after defendant rejected a favorable guilty plea); *Buck v. Davis*, 580 U.S. 100, 118–26 (2017) (The State presented prejudicial evidence at capital sentencing.).

This Court has done the same. *See White v. Thaler*, 610 F.3d 890, 899–907 (5th Cir. 2010) (The petitioner admitted causing the victim's death, but trial counsel hurt that defense that he acted in mortal fear.); *Nelson v. Quarterman*, 472 F.3d 287, 292–315 (5th Cir. 2006) (en banc) (erroneous capital penalty-phase instructions); *Virgil v. Dretke*, 446 F.3d 598, 611–14 (5th Cir. 2006) (failure to challenge two potential jurors who expressed bias during voir dire); *Burdine v. Johnson*, 262 F.3d 336, 348–50 (5th Cir. 2001) (en banc) (Trial counsel slept through parts of the trial.). Part III of *Crawford* conflicts with every one of those decisions.

In this case, Mr. Wooten is not claiming innocence of the basic misdemeanor offense of DWI. And he admitted that that he had been convicted of two prior DWIs,

though the second admission was made in the form of a punishment-enhancing predicate rather than an elemental predicate.

The petitioner in *Crawford* has asked this Court to rehear the case en banc. Mr. Wooten's attorneys joined an amicus brief filed by all the Federal Public Defender offices in the Fifth Circuit urging this Court to revise or delete Part III of that opinion. The Court previously denied Mr. Wooten's request to stay this appeal pending resolution of the rehearing petition. Even so, Mr. Wooten urges the Court not to follow or apply Part III of *Crawford* in this case because it is wrong and it conflicts with binding precedent from the Supreme Court and the Fifth Circuit.

## Conclusion

The Court should vacate the decision below and remand.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender for the
Northern District of Texas

*/s/ J. Matthew Wright*
Assistant Federal Public Defender
Texas Bar No. 24058188
500 South Taylor Street, Suite 110
Amarillo, Texas 79101
Telephone: (806) 324-2370
Matthew_Wright@fd.org

*Attorneys for Mr. Wooten*

**Certificate of Service**

I filed this brief via the Court's ECF system on May 8, 2023. Opposing counsel, a registered filer, is deemed served.

/s/ J. Matthew Wright

**Certificate of Compliance**

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because the document contains 10.826 words, exclusive of exempted portions.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font.

/s/ J. Matthew Wright