No. 21-10924

IN THE

# United States Court of Appeals for the Fifth Circuit

CHRISTOPHER WOOTEN,
*Petitioner-Appellant*,

v.

BOBBY LUMPKIN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent-Appellee*.

On Appeal from the United States District Court
for the Northern District of Texas, Abilene Division
USDC No. 1:19-CV-00157-H

**BRIEF OF RESPONDENT-APPELLEE**

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
  for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

NATHAN TADEMA*
Assistant Attorney General
State Bar No. 24044285
  *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
Nathan.tadema@oag.texas.gov

*Counsel for Respondent-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellee, as a governmental party, need not furnish a certificate of interested persons.

s/ Nathan Tadema
NATHAN TADEMA
Assistant Attorney General
*Counsel of Record for*
*Respondent–Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2)(c), oral argument should be denied because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................i

STATEMENT REGARDING ORAL ARGUMENT ................................ii

TABLE OF AUTHORITIES ......................................................................v

JURISDICTIONAL STATEMENT......................................................1

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE CASE ..............................................................3

I.    Relevant Criminal History.....................................................3

II.   Facts of the Crime..................................................................4

III.  Plea Proceedings.....................................................................4

IV.  State Post-Conviction Proceedings.......................................9

V.    Federal Proceedings ............................................................13

SUMMARY OF ARGUMENT ...........................................................15

ARGUMENT .......................................................................................19

I.    Standard of Review..............................................................19

      A. Standard of Review on Appeal.......................................19

      B. Standard of Review Under AEDPA..................................19

      C. The Applicability of the "Look Through" Doctrine.................25

i. The "look through" doctrine does not apply....................26

ii. Even if the look through doctrine applies, it does not change the analysis .....................................................30

II. The State Court Reasonably Denied Wooten's Involuntary Plea Claim...................................................................................33

    A. Guilty plea standard of review........................................33

    B. Wooten's formal declarations in open court are prima facie proof that his plea was voluntary.........................................34

    C. Wooten's argument that he did not plead guilty intelligently due to misadvice is rebutted by the record.......................36

    D. Even if the misadvice rendered Wooten's plea not intelligent, the misadvice was harmless..........................................43

III. The State Court Reasonably Denied Wooten's Trial Court Error Claim. ..............................................................................48

    A. Wooten's Voluntary Guilty Plea Waived His Claim of Trial Court Error .................................................................49

    B. The trial court's error was harmless .............................53

IV. The State Court Reasonably Denied Wooten's Ineffective Assistance of Counsel Claim...............................................55

    A. The *Strickland/Hill* standard.......................................56

    B. Wooten fails to show deficiency because his claim is conclusory and trial counsel performed based on sound trial strategy............................. .......................................58

iv

C.   Wooten fails to show prejudice because the indictment error was harmless as explained in previous claims..............................……………………………….62

V.   Even if the Court Believes the State Violated Wooten's Constitutional Rights Despite AEDPA Deference, "Law and Justice" to Not Justify a Grant of Habeas Corpus Relief in This Case…………………………………………………………..……..64

CONCLUSION………………………………………………………..…64

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)……...…………67

CERTIFICATE OF SERVICE……………………………………………67

CERTIFICATE OF COMPLIANCE WITH ECF STANDARDS………...68

v

**TABLE OF AUTHORITIES**

**Cases**                                                                   **Page**

*Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994)............57

*Atkins v. Hooper*, 979 F.3d 1035, 1049 (5th Cir. 2020)..........44

*Blackledge v. Allison*, 431 U.S. 63 (1977) ...............35

*Bonvillain v. Blackburn*, 780 F.2d 1248 (5th Cir. 1986) ........36

*Bousley v. United States*, 523 U.S. 614 (1998)................37, 38

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ...........44

*Brown v. Cain*, 337 F.3d 546 (5th Cir. 2003).................62

*Brown v. Davenport*, 142 S.Ct. 1510 (2022)................64

*Carter v. Collins*, 918 F.2d 1198 (5th Cir. 1990)..................35

*Catalan v. Cockrell*, 315 F.3d 491 (5th Cir. 2002) ................23

*Craddock v. Lumpkin*, No. 4:22-CV-519-P, 2023 WL 2429497 at *1 (N.D. Tex. March 9, 2023) ............27

*Crawford v. Cain*, 68 F.4th 273, 286 (5th Cir. 2023)............64

*Cruz v. Davis*, No. MO:18-CV-00074-DC, 2018 WL 9815613 (W.D. Tex. August 21, 2018) ................27

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ...............24

*Diaz v. Martin*, 718 F.2d 1372 (5th Cir. 1983)................34

*Dunn v. Reeves*, <u>141 S. Ct. 2405</u> (2021)....................................................22

*Early v. Packer*, <u>537 U.S. 3, 8</u> (2002) .....................................................23

*Ex parte Reed*, <u>271 S.W.3d 698, 728</u> (Tex. Crim. App. 2008) ................28

*Ex parte Rodgers*, <u>598 S.W.3d 262</u> (Tex. Crim. App. 2020) .. 15, 47, 51, 62

*Forsyth v. Lumpkin*, No. 4:22-cv-0860-P, <u>2023 WL 1871576</u> (N.D. Tex. January 11, 2023) (same) ...................................................................27

*Harrington v. Richter*, <u>562 U.S. 86, 98</u> (2011) .............................. passim

*Henderson v. Morgan*, <u>426 U.S. 637</u> (1976) .............................. 37, 38, 41

*Hicks v. Franklin*, <u>546 F.3d 1279</u> (10th Cir. 2008)................................39

*Hill v. Lockhart*, <u>474 U.S. 52</u> (1985) .............................................. passim

*Hobbs v. Blackburn*, <u>752 F.2d 1079</u> (5th Cir. 1985) ..............................34

*James v. Cain*, <u>56 F.3d 662</u> (5th Cir. 1995)………………………….....34

*Jenkins v. Vannoy*, No. 17-30842, <u>2018 WL 11301544</u> (5th Cir. Nov. 21, 2018)..................................................................................................59

*Kamenicky v. Davis*, No. H-17-3758, <u>2018 WL 6267769</u> at * 1 (S.D. Tex. November 28, 2018) ...........................................................................27

*Langley v. Prince*, <u>890 F.3d 504, 515</u> (5th Cir. 2018) ...........................31

*Neal v. Puckett*, <u>286 F.3d 230, 246</u> (5th Cir. 2002) ................................22

*Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)......................................57

*Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005) ............................19

*Randle v. Scott*, 43 F.3d 221, 226 (5th Cir. 1995)............................50, 56

*Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007)............................19

*Shinn v. Ramirez*, 142 S.Ct. 1718, 1731 (2022) .....................................64

*Shockley v. Davis*, No. 3:16-CV-0304-M, 2018 WL 3747914 (N.D. Tex. July 12, 2018)...................................................................................27

*Spinelli v. Collins*, 992 F.2d 559 (5th Cir. 1993) ...................................34

*Taylor v. Hamlet*, 372 Fed. Appx. 749 (9th Cir. 2010) ..........................45

*Taylor v. Whitley*, 933 F.2d 325 (5th Cir. 1991) ....................................50

*Theriot v. Whitley*, 18 F.3d 311 (5th Cir. 1994) .....................................36

*Tollett v. Henderson*, 411 U.S. 258 (1973) .............................................49

*Townsend v. Burke*, 334 U.S. 736 (1948) ....................................48, 53, 54

*United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013) ............45

*United States v. Coil*, 442 F.3d 912 (5th Cir. 2006)...............................52

*United States v. Dominguez-Benitez*, 542 U.S. 74 (2004) ................44, 45

*United States v. Palacios*, 928 F.3d 450 (5th Cir. 2019).........................50

*United States v. Tucker*, 404 U.S. 443 (1972) ...................................49, 54

*Williams v. Taylor*, <u>529 U.S. 362</u> (2000) ................................................. 20

*Wilson v. Sellers*, <u>138 S. Ct. 1188</u> (2018) ....................................... passim

*Woodford v. Visciotti*, <u>537 U.S. 19</u> (2002) ........................................ 21, 23

*Wooten v. Davis*, <u>808 Fed. Appx. 255</u> (5th Cir. 2020) ........................... 29

*Wooten v. Davis*, No. 1:14-CV-072-C, <u>2018 WL 10424865</u> (N.D. Tex. April 30, 2018) ..................................................................... 29

*Wooten v. State*, No. 11-19-00135-CR, <u>2019 WL 6001229</u> (Tex, App. Eastland Nov. 14, 2019)..........................................………………………16

*Yarborough v. Alvarado*, <u>541 U.S. 652</u> (2004) .................................. 21, 25

**Statutes**

<u>28 U.S.C. § 2243</u> ............................................................................. 65

<u>28 U.S.C. § 2254(d)</u> ................................................................. passim

<u>28 U.S.C. § 2254(d)(1)</u> ................................................................. 24

<u>28 U.S.C. § 2254(e)(1)</u> ................................................................. 35

<u>28 U.S.C. § 2254(e)(2)</u> ................................................................. 25

# JURISDICTIONAL STATEMENT

This appeal proceeds from a federal habeas petition filed below pursuant to 28 U.S.C. §§ 2241 and 2254. On August 31, 2021, the district court issued its order and final judgment dismissing Wooten's petition with prejudice. ROA.1065-99. This Court subsequently granted a certificate of appealability (COA) as to three issues, specified below. Order, May 31, 2022, at 2 (Order). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253(c).

# STATEMENT OF THE ISSUES

Wooten filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Texas conviction and sentence for murder. After the district court denied relief, a judge of this Court granted a certificate of appealability (COA) on three issues: (1) Whether "the trial court violated Wooten's right to due process when it predicated the conviction on misinformation and misreading of court records," (2) Whether Wooten's guilty plea was "unknowing and involuntary," because he was "wrongly advised about the nature of his enhancing conviction," and (3) Whether trial counsel was ineffective for "failing to

investigate the elements listed in the indictment and correct the trial court's" error. Order at 1-2. To best respond to Wooten's brief, which organizes these issues differently, the Director presents the following issues before the Court:

I.     Whether *Wilson v. Sellers* requires this Court to "look through" to the state habeas trial court's findings, even though the Texas Court of Criminal Appeals (CCA) denied relief without adopting the trial court's findings and the trial court's findings provided no supportive reasoning.

II.    Whether the trial court's erroneous ruling concerning Wooten's 1983 DWI as a jurisdictional enhancement rendered his plea involuntary even though Wooten knew the enhancement was invalid and the enhancement would have had no impact on his sentence and decision to plead guilty.

III.   Whether Wooten's voluntary guilty plea waived his claim that "misinformation" from the trial court and defense counsel violated his due process rights, and whether this misinformation materially affected the outcome of the case.

IV.    Whether Wooten's conclusory claims about counsel's advice and investigation sustain his burden under *Strickland/Hill* despite trial counsel's affidavit indicating that he and Wooten jointly engaged in a strategy to secure a favorable plea agreement limiting Wooten's punishment exposure based on his "florid" criminal history.

V.     Whether "law and justice" justify a grant of habeas relief when Wooten admits that he committed the crime, and his criminal history justifies a minimum punishment greater than the punishment he received.

## STATEMENT OF THE CASE

## I.     Wooten's Relevant Criminal History

Christopher Wooten's familiarity with the criminal justice system predates the 1986 *Challenger* explosion. His criminal history originates in June of 1983 when he pleaded to driving while intoxicated (DWI) in Howard County in exchange for a twelve-month probationary sentence. ROA.881, 1388. He picked up two more DWI convictions out of Howard County in quick succession in April of 1986 and September of 1986. ROA.1351, 1389-91, 1618. He later diversified his criminal resume by procuring concurrent felony theft and burglary convictions and five-year sentences out of Tarrant County in March of 1995. ROA.859-62, 1351. In April of 2012, he returned to his old ways, pleading guilty to another DWI conviction in Howard County, but this time the State enhanced it to a second-degree felony via his previous convictions, so he agreed to a ten-year sentence. ROA.837, 1351, 1650. His latest conviction, and the conviction at issue in this case, involves another DWI out of Howard County in August of 2016, where he pleaded guilty pursuant to a plea agreement in exchange for a thirteen-year sentence. ROA.1470-71.

## II.    Evidence of the Crime

In reference to the underlying conviction for this case, the police reported that they pulled Wooten over for a traffic violation at 12:35 a.m. on February 22, 2016. ROA.931. He subsequently admitted he had been drinking "p[o]quito"[1] and flunked several sobriety tests. ROA.931. Following his arrest, officers discovered a cold, partially-consumed beer in Wooten's truck, and Wooten screamed and cursed at them for a prolonged period while they transported him for a blood draw. ROA.931, 1516. Lab results indicated Wooten had .265 alcohol level, over triple the legal limit. ROA.931.

## III.    Plea Proceedings

The State initially indicted Wooten with felony DWI, using his 1983 DWI and April 1986 DWI as jurisdictional enhancements. ROA.1435-36 (indictment). The indictment also invoked Wooten's two prior felonies for DWI and burglary, exposing him to a sentencing range with a minimum punishment of twenty-five years of confinement. ROA.1435-36, 1638. Wooten hired private counsel, Rick Hamby, to

---

[1] Spanish for "little."

4

represent him. ROA.924-25. Knowing his criminal history, described as "quite florid" and "colorful," Wooten sought to reduce his sentencing exposure through plea bargaining from the outset of his case. ROA.1433. Wooten eventually agreed to plead guilty in exchange for a thirteen-year sentence and the State's waiver of one of the felony enhancement allegations. ROA.1461-62 (Wooten's acknowledgement of plea agreement), 1648-49 (transcript).

At the initial guilty plea hearing and unbeknownst to Hamby, Wooten surprised everyone by revealing that he had mailed some pro se motions to the trial court shortly before the hearing. ROA.926-27, 1653-54. Although Wooten insisted he still wanted to "do the deal," the trial court postponed the hearing until he could read and review Wooten's motions. ROA.928.

Shortly thereafter, the trial court reviewed Wooten's scribbled motions: a "Motion to Dismiss Attorney," "Motion for Expunction," and a "Motion for Non-disclosure," and issued an order denying them. ROA.1437-60 (motions), 1480 (order). In its order, the judge erroneously rejected Wooten's argument that his 1983 DWI judgment was a

deferred adjudication, found "it was not a deferred adjudication," and therefore allowed its use for enhancement purposes.[2] ROA.1480. In other words, the judge incorrectly concluded that Wooten's 1983 DWI deferral qualified as a final conviction for enhancement purposes.

At the subsequent plea hearing, Wooten indicated that he wished to file a motion for new trial, at which point the trial court told him he would immediately stop the plea hearing if he wished to do that. ROA.1644-45. The trial court reaffirmed his ruling that the 1983 sentence "was not a deferred adjudication," but assured Wooten he had a right to appeal the ruling. ROA.1645. Wooten nevertheless insisted that he wished to go through with his guilty plea. ROA.1645. At the same time, Wooten indicated his desire to appeal. ROA.1645.

At that point the prosecutor, Mr. Wilkerson, explicitly balked at Wooten's plan to breach his plea agreement, stating "my understanding is he's waiving his right to appeal as part and parcel of this deal. And if

---

[2] The state trial court apparently failed to account for Wooten's first DWI predating the change in the law that occurred on January 1, 1984, which allowed subsequent probated DWI convictions to be used for enhancement purposes. *See Ex parte Serrato*, 3 S.W.3d 41, 43 (Tex. Crim. App. 1999).

that's not the case, we need to know right now." ROA.1645. The prosecutor relayed his understanding that Wooten "said he's going to appeal [his pretrial motions]. We withdraw our offer . . . if we have to do any appellate work, we might as well go to trial." ROA.1646. Wooten then enquired doubtfully, "Do you want me to withdraw the appeal?" ROA.1646. At that point, the judge allowed a six-minute discussion off the record to resolve the conflict. ROA.1646.

When the hearing resumed on the record, the following exchange occurred:

> THE COURT: Mr. Wooten, we've had some discussions off the record. I want to make sure those are on the record and make sure we all understand each other.
>
> Mr. Wilkerson, the District [Attorney], had indicated that the State would withdraw their offer if you insist on your right to pretrial - - to appeal the pretrial rulings.
>
> Do you understand that's the position of the State in this case?
>
> WOOTEN: I do, Your Honor.
>
> THE COURT: And my understanding after visiting with Mr. Hamby, that you are wanting and willing to waive any rights of appeal as to - - well, on all matters, unless I should give you permission to do so. In other words, as to pretrial rulings

or any other matters, that you are waiving your right to appeal. Is that what you wish to do?

WOOTEN: Yes.

THE COURT: All right. Understanding, if you want to go to trial - -  and we'll have a trial - - then certainly you're going to have a right to appeal pretrial rulings, findings of the jury or the Court on evidentiary matters. You would have all of those rights. Nobody could make you give those up if we go to trial. Do you understand that?

WOOTEN: Yes, sir.

THE COURT: For purposes here today, though, if you want to go forward with this plea - - and I'm speaking not from the Court's position necessarily, but from the State's position - - Mr. Wilkerson has indicated that he just   - - he will withdraw the offer if you're insisting on your right to appeal the pretrial rulings. Do you understand that?

WOOTEN: Yes, sir, I completely understand.

THE COURT: And after talking with Mr. Hamby, it's my understanding that you do wish to waive any rights to appeal any matters in this case, unless I should give you permission to do so. Is that right?

WOOTEN: That is correct, yes, sir.

ROA.1646-48. The Court then clarified that the State, as part of the plea agreement, would waive the enhancement predicated on Wooten's prior conviction for burglary, thereby reducing his punishment range to

8

that of a second-degree felony, or two to twenty years of confinement. ROA.1648-51. In exchange, Wooten pleaded "true" to the remaining enhancements, pleaded "guilty" to felony DWI, and agreed to serve a thirteen-year sentence of confinement as part of the plea agreement. ROA.1648-52. Before finalizing his plea, the judge again reminded Wooten that, if he went forward with his plea, he would "lose any rights of appeal." ROA.1652. Wooten confirmed that he understood. ROA.1652. The judge gave Wooten "one last chance" to raise "[a]ny other questions, hesitations," and Wooten confirmed, "I'm fine, sir." ROA.1654. The judge then sentenced Wooten in accordance with the plea agreement on August 29, 2016. ROA.1654.

## IV.    State Post-Conviction Proceedings

Despite his promise to not appeal as part of the plea agreement, Wooten immediately appealed. ROA.1541-42. The appellate court dismissed his appeal due to his express and unequivocal waiver of appeal, and the CCA refused to consider his following petition for discretionary review by March of 2017. ROA.1236-37, 1302, 1541-42.

Undeterred, Wooten then attacked his "completely understood" plea agreement through pro se state habeas corpus applications. He filed his first and most relevant state habeas application challenging this conviction in April of 2017. ROA.1427. As the federal district court summarized,

[Wooten] raised the following claims in his first application:

(1) 'Judicial misconduct—Judge Yeats acting as prosecutor, jury, judge-n-hangman. Due Process constitution violator.'

(2) 'Ineffective assistance of counsel 14th Amend. Cons. Violation for Petitioner'

(3) 'Cruel-n-unusual Punishment, excessive bail went from $2500 to $50,000.00 for no reason. Threats of 25 to Life, Bargaining for 13 yrs for a misdemeanor DWI,' and

(4) 'Denied appointment of right to representation by counsel. After counsel Hamby abandoned his client, petitioner(p), failing to withdraw or notify the court of his client's desire to appeal.' [all sic]

[ROA.1422-26.]

In the text under these headings, [Wooten] complains that Judge Yeats, Rick Hamby, and District Attorney Hardy Wilkerson 'have lied, mislead with deception and erroneous advice, failing to follow Texas code, rules, principles of criminal procedure [all sic].' [ROA.1422] He complains that

> Judge Yeats 'granted [him the] right to appeal then repealed [the] order.' (*Id*.) He accuses the trial judge of perjury, for 'prosecuting again and again non-final convictions,' so that he had 'no way of receiving a fair trial . . . putting Petitioner Wooten in a corner, back against a wall, denying due process, liberty, justice, and freedom for all [all sic].'' (*Id*. at 10) He states that a trial judge is supposed to ensure 'a defendant'[s] decisions are made voluntarily, intelligently, and knowingly.' (*Id*.) He alleges that his attorney was ineffective for failing to research his prior DWIs, giving erroneous advice, and for 'having colluded behind closed doors . . . in concerted effort with Judge Yeats to sentence his client . . . to 13 yrs for a misdemeanor DWI.' (*Id*. at 11.)

ROA.1069-70. The district attorney responded with a general denial. ROA.1429. The state trial court reviewed Wooten's "rambling and unintelligible" state habeas application and recognized only two claims: improper conduct by the trial judge and ineffective assistance of counsel. ROA.1431. In unexplained findings, the trial court concluded "no evidence" supported either claim. ROA.1431-32.

The CCA "denied" Wooten's initial application "without written order" on March 14, 2018, but did not expressly adopt the findings of the trial court. ROA.1412.

Wooten then peppered the State with at least seven more state habeas applications attacking this conviction. The CCA dismissed four

of these applications as subsequent under Texas's abuse-of-the-writ rules. ROA.1658, 1732, 1981, 1998. It dismissed the other three on procedural grounds. ROA.1684, 1708, 1767.

During this time, Wooten also filed a state habeas petition seeking permission to file an out-of-time direct appeal of his 1983 DWI conviction. ROA.1799-808. The CCA granted his permission, and, following his appeal, the intermediate appellate court reversed the 1983 misdemeanor "conviction" because it had never been finally adjudicated and remanded the case to the county court to reflect a dismissal for his 1983 DWI. ROA.1881-84; *Wooten v. State*, No. 11–19–00135–CR, 2019 WL 6001229, at *2 (Tex. App.—Eastland Nov. 14, 2019) ("The county court's order is reversed to the extent that it indicates that Wooten was finally 'convicted' of DWI in Cause No. 31429 based upon the June 21, 1983 probated judgment and to the extent that it denied Wooten's request for habeas relief from that probated judgment."). In doing so, the intermediate appellate court also confirmed that its jurisdiction extended to only the 1983 misdemeanor DWI proceeding, and not to the 2016 felony DWI conviction at issue here. *Id*. He mentioned this

development in a state habeas application, but the CCA dismissed that application pursuant to the abuse-of-the-writ statute. ROA.1969, 1981

## V. Federal Proceedings

As the federal district court detailed, Wooten's federal habeas petition "endured many procedural turns." ROA.1070-72. Ultimately, after the appointment of counsel, Wooten raised the claims identified in this Court's COA, among other claims. ROA.1073. In pertinent part, the district court determined that Wooten failed to overcome the relitigation bar promulgated in 28 U.S.C. 2254(d) because (1) the state court could have reasonably concluded that his guilty plea and waivers were voluntary, knowing, and intelligent, (2) the state court could have reasonably found that defense counsel's representation of Wooten satisfied both prongs of *Strickland*'s deferential standard. ROA.1065-98. The district court also denied COA, concluding "[Wooten] has failed to show that reasonable jurists would find (1) this Court's 'assessment of the constitutional claims debatable or wrong,' or (2) 'it [is] debatable whether the petition states a valid claim of the denial of a constitutional right' and 'debatable whether this Court was correct in its procedural

13

ruling.' " ROA.1098 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The district court accordingly denied and dismissed Wooten's federal habeas petition with prejudice on August 31, 2021. ROA.1097-99.

After this Court granted a certificate of appealability (COA) in the instant case, Wooten filed a suggestion for reconsideration in August of 2022 with the CCA to persuade the CCA to reconsider his first state habeas application. ROA.2075-83. More specifically, Wooten asked the CCA to vacate his 2016, second-degree felony DWI conviction because, absent the availability of his 1983 DWI "conviction" for enhancement purposes, Wooten could have been charged with only a third-degree felony. ROA.2081-82. Facing the prospect of this Court scrutinizing the State's indictment error, the Howard County District Attorney's Office joined Wooten in this effort and agreed to compromise with Wooten by reducing Wooten's sentence to an eight-year term of confinement if the CCA reconsidered his state habeas application.[3] ROA.2075-83. But the

---

[3] Given that Texas law invests each local district attorney with authority to defend their own convictions in state habeas, the Howard County District

(continued . . .)

CCA denied the joint suggestion for reconsideration without written order in September of 2022, citing cases which found similar DWI enhancement errors to be harmless error when another conviction could be substituted in for the erroneous enhancement. ROA.2087 (citing *Ex parte Rodgers*, 598 S.W.3d 262 (Tex. Crim. App. 2020) and *Ex parte Parrot*, 396 S.W.3d 531 (Tex. Crim. App. 2013).

## SUMMARY OF THE ARGUMENT

I.    *Wilson*'s "look through" doctrine either does not apply or does not affect the analysis of this case. The CCA, by not adopting the trial habeas court's findings as it often does, implicitly relied on different reasoning from the trial court for denying habeas relief. The CCA confirmed as much when it cited a "harmless error" pair of cases to support its summary denial of reconsideration. Since the CCA repeatedly signaled that it did not rely on the trial court findings, the "look through" presumption should not apply in this case. Regardless,

_____

Attorney's Office operates independently from the Director, so the Director was not a party to the joint suggestion for reconsideration before the CCA and does not adopt any of the statements contained within the joint suggestion.

even if the Court did apply the presumption, it would be unhelpful since the state habeas trial court's findings lack any substantial reasoning which would give insight into why the state court rejected the instant claims.

**II.**     The state court reasonably denied Wooten's claim that his guilty plea was unintelligent, and therefore involuntary, for two reasons. First, although the trial court misstated the law by ruling that Wooten's 1983 DWI was "not a deferred adjudication" and could be used as a jurisdictional enhancement, Wooten pleaded guilty intelligently, because he knew the trial court misstated the law yet explicitly waived his right to appeal the trial court's ruling in exchange for a generous plea agreement. Second, even if he entered his plea unintelligently, the trial court's misstatement is harmless under *Brecht* because Wooten had another DWI conviction that could have been used as a jurisdictional enhancement instead of his 1983 DWI. So, even if the trial court ruled correctly, the prosecution could have simply reindicted Wooten and placed him in an identical legal predicament as before the trial court's erroneous ruling.

**III.** The state court reasonably denied Wooten's trial court error claim for two reasons. First, when Wooten voluntarily pleaded guilty in exchange for a reduced sentence, he waived the claim. Second, the trial court error was harmless for the same reasons as his involuntary plea claim.

**IV.** Because Wooten fails both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). the state court reasonably denied his claim that counsel ineffectively investigated and advised him about his 1983 DWI enhancement.

First, Wooten fails *Strickland*'s deficiency prong, because his claim is conclusory and trial counsel acted based on sound trial strategy. His claim is conclusory because Wooten alleges counsel gave deficient advice and conducted a deficient investigation, but, other than Wooten's self-serving allegations, the record is silent about how counsel advised Wooten or investigated his case. Regardless, counsel acted based on sound trial strategy to seek a thirteen-year plea agreement because Wooten's criminal history exposed Wooten to a minimum-

twenty-five-year sentencing range even if he quashed the indictment due to the erroneous enhancement.

Second, Wooten fails *Strickland*'s prejudice prong for the same reasons his trial court error and involuntary plea claims would be harmless errors—his substantial criminal history would support his sentencing range even if he objected and quashed the indictment.

**V.** Even if Wooten successfully alleged a constitutional violation and overcame AEDPA deference to the state court judgment, Wooten cannot satisfy §2243's requirement that "law and justice" supports his request for habeas relief. Wooten admits his guilt and has a lengthy history as a habitual felon and DWI offender, so there is no concern in this case about excessively punishing a "factually innocent" man.

**ARGUMENT**

## I.    Standard of Review

### A.    Appellate standard of review

The Director agrees with Wooten that, "[i]n a habeas appeal, this court reviews legal conclusions de novo and factual findings for clear error." Appellant's Br. 15 (citing *Ramey v. Lumpkin*, 7 F.4th 271, 278 (5th Cir. 2021)). When examining mixed questions of law and fact, the Court employs "a de novo standard by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005) (citing *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000)). "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Rivera v. Quarterman*, 505 F.3d 349, 361 (5th Cir. 2007).

### B.    AEDPA's "highly deferential" standard in § 2254 cases

Under 28 U.S.C. § 2254(d), a federal court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the relevant constitutional claim by the state court,

19

(1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). The Supreme Court explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent yet reaches an opposite result. *Williams*, 529 U.S. at 405-06.

A "run-of-the-mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407-09.

To determine if the state court unreasonably applied Supreme Court precedent, a federal court "must determine what arguments or theories supported or . . . *could have supported*, the state court's decision; and then it must ask whether it is *possible fairminded jurists could disagree that those arguments* or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. This is

particularly true when reviewing a state court's application of *Strickland*, which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court's denial. *Richter*, 562 U.S. at 105; *Dunn v. Reeves*, 141 S. Ct. 2405, 2410-11 (2021).

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against *extreme malfunctions* in the state criminal justice systems," *not a substitute for ordinary error correction through appeal*.

*Id*. (emphasis added) (internal citations omitted).

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v.*

*Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("[W]e review only the state court's decision, not its reasoning or written opinion[.]"). Indeed, state courts are presumed to "know and follow the law." *Visciotti*, 537 U.S. at 24. And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's relitigation bar nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 562 U.S. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381. Stated differently,

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there *was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Richter*, 562 U.S. at 103 (emphasis added). And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of

23

the Supreme Court "before it can apply to the facts at hand" because such a process suggests the proposed rule is not clearly established. *Alvarado*, 541 U.S. at 666.

Further still, excluding the narrow exceptions contained in 28 U.S.C. § 2254(e)(2), while reviewing the state court's decision for reasonableness, if a federal court were inclined to *grant* relief, it must consider *only* evidence that was presented to the state court. The Supreme Court has held that review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Again, a federal habeas court is prohibited from granting relief under § 2254(d)(2) unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)); *Pinholster*, 563 U.S. at 181. In continuation of AEDPA's theme of mandating deference toward the state court decisions, this record limitation appears restricted to the petitioner and grants of habeas relief, not to the respondent or denials of habeas relief. *See* 28 U.S.C. § 2254(d)(1) ("An application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be *granted* . . . unless the adjudication of the claim . . .") (emphasis added); 28 U.S.C. § 2254(e)(2) ("If *the applicant* has failed to develop the factual basis of a claim in State court proceedings . . .") (emphasis added).

## C. Applicability of the "look through" doctrine

Because his case depends on confining this Court to the abbreviated findings of fact and conclusions of law issued by the state habeas trial court ("the trial court's findings"), Wooten devotes lengthy briefing to the "look through" doctrine. Appellant's Br. 18-28. Wooten asserts that, because the CCA "rendered a summary decision on Mr. Wooten's first state habeas application," this Court must "look through" the CCA's summary decision to the state district court's limited findings to decide whether the CCA's denial of habeas relief constituted an unreasonable decision under 28 U.S.C. § 2254(d). *Id.* But the "look through" doctrine does not apply in this case, because the record signals that the CCA was not relying on the trial court's findings.

In *Wilson v. Sellers*, the Supreme Court determined that, when the state court denies a habeas petition without reasons, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." [138 S. Ct. 1188, 1192](2018). From there, that court should "presume that the unexplained decision adopted the same reasoning," and "review the specific reasons given by the state court and defer to those reasons if they are reasonable." *Id*. But the State can rebut this presumption "by showing that the unexplained affirmance relied on or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id*.

> **i.** **The "look through" presumption does not apply here, because the record indicates that the CCA refused to adopt the trial court's findings.**

Here, the "look through" presumption does not apply because the CCA's decisions conveyed that the CCA did not rely on the trial court's findings. And the conclusory nature of the trial court's findings provides

no basis for why the CCA would have relied on—let alone adopted— them.

When the CCA initially "denied" Wooten's state habeas application "without written order," it signaled that it was not adopting the trial court's findings because the CCA routinely will state when it adopts the trial court's findings. ROA.1412. As the lower court noted, "the TCCA did not adopt the findings of the trial court, as it sometimes does." ROA.1087. Indeed, the CCA's summary denials of habeas relief are often predicated "on the findings of the trial court"[4] and, when its summary "denials" do not expressly adopt the findings of the trial court, the CCA tacitly signals that it is *not* adopting the trial court's findings. *See, e.g., Shockley v. Davis*, No. 3:16-CV-0304-M, 2018 WL 3747914 (N.D. Tex. July 12, 2018) ("The CCA denied the habeas application without written order and did not adopt the state habeas court's

---

[4] *See*, e.g., *Craddock v. Lumpkin*, No. 4:22-CV-519-P, 2023 WL 2429497 at *1 (N.D. Tex. March 9, 2023) (reviewing § 2254 case where the CCA "denied" petitioner's state habeas application "without written order on findings of the trial court"); *Forsyth v. Lumpkin*, No. 4:22-cv-0860-P, 2023 WL 1871576 at *1 (N.D. Tex. January 11, 2023) (same); *Kamenicky v. Davis*, No. H-17-3758, 2018 WL 6267769 at * 1 (S.D. Tex. November 28, 2018) (same); *Cruz v. Davis*, No. MO:18-CV-00074-DC, 2018 WL 9815613 (W.D. Tex. August 21, 2018) (same).

findings by signifying that it was denied on the findings of the state habeas court. The record reflects 'convincing grounds' to believe it had a different basis for its decision than the state habeas court."). Since the CCA "denied" Wooten's state habeas application without expressly adopting the findings of the trial court, it suggested that its denial of relief was not based on the findings of the trial court. *See Ex parte Reed*, 271 S.W.3d 698, 728 (Tex. Crim. App. 2008) ("we will afford no deference to findings and conclusions that are not supported by the record and will ordinarily defer to those that are.").

The CCA crystallized this implicit suggestion when it denied Wooten's suggestion for reconsideration of his state habeas application. In rejecting the suggestion for reconsideration, the CCA issued another summary denial, but this time predicated its summary denial on two case citations. ROA.2087 (citing *Ex parte Rodgers*, 598 S.W.3d 262, and *Ex parte Parrot*, 396 S.W.3d 531). Both of these citations refer to cases where the CCA deemed erroneous enhancements to be harmless error, so, by citing these cases, the CCA confirmed that it denied relief for reasons outside of the trial court's findings. ROA.2087.

The CCA's refusal to adopt the trial court's findings becomes especially apparent in light of the conclusory and scant nature of the findings. The trial court's findings invoke no rationale beyond simply concluding that "[t]here is no evidence to support [Wooten's] allegations against Judge Yeats or trial counsel Rick Hamby." ROA.1430-32. The findings also do not address Wooten's liberally-construed claim that his plea was involuntary, and instead note that Wooten's pleadings in the case are mostly "rambling and unintelligible."[5] ROA.1430-32. The findings also shy from addressing the State's indictment error, which lies at the heart of Wooten's complaints. ROA.1430-32. Because the trial court's findings do not provide clear reasoning supporting the denial of Wooten's claims, this Court should not presume that the CCA's denial adopted the reasoning of the trial court. *See Wilson*, 138 S. Ct. at 1196 ("the unreasonableness of the lower court's decision itself provides some

---

[5] The record confirms that Wooten's pro se briefing before the appointment of counsel in federal court is handwritten in all caps, prolific, littered with frivolous allegations, and generally difficult to decipher. *See*, e.g., ROA.1422-26, 1437-60, 1482-536. Indeed, Wooten has been warned for his frivolous filings and threatened with sanctions in district court and was sanctioned for repetitive and frivolous filings in this Court. *Wooten v. Davis*, No. 1:14-CV-072-C, 2018 WL 10424865 (N.D. Tex. April 30, 2018); *Wooten v. Davis*, 808 Fed. Appx. 255, 257 (5th Cir. 2020).

evidence that makes it less likely the state supreme court adopted the same reasoning.").

Between the CCA's decision to not adopt the findings of the trial court, its express reliance on case law outside the trial court findings, and the vague nature of the trial court findings, this Court should not apply the *Wilson* presumption of looking through the CCA's summary denial to the trial court's findings.

### ii. Even if the "look through" presumption applies here, it does not help Wooten's argument.

Even if this Court applied the "look through" presumption to this case, Wooten's arguments ultimately just lead the Court back to applying *Richter*'s methodology to this case.

First, *Wilson* did not abrogate the ultimate-conclusion-not-reasoning methodology found in AEDPA and *Richter*. 562 U.S. at 100-02. While *Wilson suggests* that the proper focus under § 2244(d) is the state court opinion, it did not so *hold*. *Wilson*, 138 S. Ct. at 1192 ("[If a state court issues a reasoned opinion,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."); *see also id*. at 1195 ("For one thing,

*Richter* did not directly concern the issue before us—whether to 'look through' the silent state higher court opinion[.]"). Indeed, the Supreme Court in *Wilson* explicitly described the issue before it, and that issue was *not* the methodology of § 2254(d) review—"The issue before us, however, is more difficult. It concerns how a federal habeas court is to find the state court's reasons when the relevant state-court decision on the merits, say, a state supreme court decision, does not come accompanied with those reasons." *Id.* at 1192. Because *Wilson* was not deciding the proper methodology for review under § 2254(d), and because that portion of the opinion suggesting focus on state-court reasoning is obiter dictum, it does not abrogate the ultimate-conclusion-not-reasoning methodology provided by *Richter*. *See, e.g.*, *Langley v. Prince*, 890 F.3d 504, 515 (5th Cir. 2018) ("[U]nder our circuit's interpretation of the 'unreasonable application' clause, we review only the reasonableness of the state court's 'ultimate legal conclusion,' as distinct from the thoroughness or quality of its written opinion." (citing *Neal*, 286 F.3d at 246) (per curium).

Second, the conclusory nature of the trial court's findings provides no more guidance than the CCA's denials of relief. The entire point of the "look through" presumption is to identify the rationale for a state court's "unexplained" denial of relief. *Wilson*, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision *that does provide a relevant rationale*."). But the trial court's findings provide no rationale to explain the denial of relief, and instead simply conclude that there is "no evidence" to support Wooten's claims. ROA.1430-32. Essentially, Wooten wants this Court to look through one unreasoned state decision to another unreasoned state decision. This path ultimately circles back to *Richter*'s mandate for federal courts to "determine what arguments or theories supported or . . . could have supported, the state court's decision." *Richter*, 562 U.S. at 102.

Given the conclusory nature of the trial court's findings and the continued applicability of *Richter*, the question of whether to apply the "look through" presumption amounts to a circular argument—all roads lead back to evaluating this case under *Richter* and § 2254(d).

## II. The State Court Reasonably Denied Wooten's Involuntary Plea Claim Because His Plea Was a Calculated Decision and the Misadvice He Received Was Harmless.

Wooten argues that his guilty plea was involuntary because he was misadvised by the trial judge, prosecution, and defense counsel as to whether his 1983 DWI could be used to enhance his sentence. Appellant's Br. 30-38. But the record emphatically rejects his claim, repeatedly demonstrating that Wooten has been always aware that he could challenge the use of his 1983 DWI for enhancement purposes, yet he strategically and intelligently chose to waive his challenge in exchange for a reduced sentence.

### A. The guilty plea standard of review

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him, and not necessarily

whether he understood their technical legal effect." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (quoting *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991). A guilty plea is "knowing" if the defendant understood the consequences of his plea—and, "[a]s long as the defendant understands the length of time he might possibly receive, he is fully aware of the consequences of his plea." *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993); *Hobbs v. Blackburn*, 752 F.2d 1079, 1081-82 (5th Cir. 1985). Accordingly, when "a defendant understands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, the plea must be upheld on federal review." *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983).

## B. Wooten's express declarations in open court provide prima facie proof that his plea was voluntary

In this case, the record refutes Wooten's claim of an involuntary plea. On the day of his sentencing, Wooten signed admonishments confirming that he was charged with a felony of the second degree with a sentencing range from two to twenty years of confinement. ROA.1461-62. Wooten also signed a judicial confession, in which he admitted to committing the DWI as charged and "acknowledge[d] that he . . . has a

34

full understanding of the charges against him . . . and the possible consequences of his . . . plea and has been advised by the Court of the range of punishment for that charge." ROA.1463-64. He also confirmed in writing that his "entry of a plea of guilty in this case was freely and voluntarily made by him," and that he "waive[d] any appeal." ROA.1466-67.

When making a collateral challenge to a guilty plea, a petitioner must vault the formidable barrier that, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Wooten bears the heavy burden to rebut the presumption of regularity accorded these records with clear and convincing evidence, but he has failed to make any attempt to rebut the presumption and weight afforded these documents. 28 U.S.C. § 2254(e)(1); *Carter v. Collins*, 918 F.2d 1198, 1202 n.4 (5th Cir. 1990); *see Bonvillain v. Blackburn*, 780 F.2d 1248,

1250 (5th Cir. 1986) ("[I]n a habeas proceeding, the petitioner has the burden of proving that he is entitled to relief.").

Wooten's signatures on these documents are prima facie proof of the validity of his plea. *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994). Wooten does not deny that he signed the plea papers and understood the waivers and the terms of the agreements, or dispute that he stated in open court that his pleas were free and voluntary. The state court could have reasonably denied Wooten's claims by relying on his formal declarations in open court that he voluntarily pleaded guilty and waived his ability to appeal the enhancement issue.

## C. The record undercuts Wooten's argument that he did not have an intelligent understanding of the nature of the crime charged.

Wooten attempts to rebut his signed declarations by claiming that he did not sign these declarations intelligently because "the trial court [mis]informed him that his 1983 DWI "was not a deferred adjudication and that it therefore would count as one of the two prior DWI convictions necessary to prove felony DWI." Appellant's Br. 30; ROA.1645. Wooten therefore claims he did not understand "the nature

of" his enhanced DWI conviction. Appellant's Br. 31. But the record repudiates the suggestion that Wooten did not understand the nature of his proceedings.

In support of his argument, Wooten relies on *Henderson v. Morgan*, 426 U.S. 637 (1976) and *Bousley v. United States*, 523 U.S. 614, 618 (1998), but his reliance depends on overbroad application of those cases. *Id*.

In *Henderson*, the Supreme Court affirmed granting habeas corpus relief for a defendant who pleaded guilty to second-degree murder, specifically on the ground that the defendant had not entered the plea with knowledge that intent to kill was an element of the crime. 426 U.S. 637. The Supreme Court observed that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id*. at 647. The Court concluded, however, that the "unique" facts in the case—that the intent to kill element was not explained to the defendant, at any time, that he was mentally retarded, and that the indictment did not charge second-

degree murder—effectively rebutted that presumption. *Id*. In doing so, it reaffirmed the principle that a plea is not voluntary and intelligent unless the defendant first "received real notice of the true nature of the charge against him." *Id*. at 645.

*Bousley* provides little guidance beyond *Henderson*. In that case, the Court briefly entertained the suggestion that the defendant pleaded guilty involuntarily because he was not correctly informed about what it meant to "use" a firearm before pleading guilty to "us[ing] a firearm" in conjunction with a drug trafficking crime. *Bousley*, 523 U.S. at 616. But ultimately, the Court remanded the case on procedural grounds without clearly establishing any precedent beyond *Henderson*. *Id* at 624.

The facts of this case clash with *Henderson*'s precedent. Unlike *Henderson*, Wooten's case does not involve the "unique" facts of a mentally unsound defendant or a facially defective indictment. *See Henderson*, 426 U.S. at 647. On the contrary, Wooten was savvy enough to raise the indictment error in pro se filings before pleading guilty and his indictment appears facially valid. ROA.1435-36, 1640.

Perhaps realizing that *Henderson* and *Bousley* are not enough to sustain his claim, Wooten also reaches out of circuit to *Hicks v. Franklin*, <u>546 F.3d 1279, 1286</u> (10th Cir. 2008) for support. *See* Appellant's Br. 35-36. But that case readily distinguishes itself from this one. The transcript in *Hicks* reflected that the defendant did not understand a "critical element" (i.e. the mens rea) of the crime, did not discuss the critical element with counsel, provided a description of the crime that did not satisfy the intent element of the crime, and received an erroneous explanation of the intent element from the judge before pleading guilty. <u>546 F.3d at 1284-87</u>. Unlike *Hicks*, the judge's error in this case consisted of only an erroneous ruling rather than an erroneous explanation about the meaning of a critical element of the crime, and, more importantly, the record in this case shows that Wooten had an extraordinary understanding of the jurisdictional enhancements. *See id*. at 1287 (distinguishing the facts of *Hicks* from a case where "the defendant repeatedly stated he understood the crimes he faced" and "the court did not entirely omit an element of the charged crime to a

defendant who had expressed his lack of understanding") (citing *Carpenter v. State*, <u>929 P.2d 988, 993</u>, <u>997</u> (Okla. Crim. App. 1996)).

In fact, the record shows that Wooten's understanding of the jurisdictional enhancements exceeded that the trial judge. He correctly challenged one of his enhancements in a pretrial motion. <u>ROA.1437-60</u>. And he did so *pro se*. <u>ROA.1437-60</u>. When the trial judge overruled his motion and erroneously ruled that Wooten's 1983 DWI was "not a deferred adjudication," Wooten *knew* the trial court erred. <u>ROA.1644-46</u>. He personally declared at his plea hearing—despite the trial court's statement that his 1983 DWI was not a deferred adjudication and his attorney's supposed "misadvice" off the record—that he had a motion for new trial already "wr[i]tten up" as the "next step on my appeal." <u>ROA.1644-45</u>. Only when the prosecutor threatened to "withdraw our offer" in response to Wooten's desire to appeal did Wooten decide to waive the enhancement error. <u>ROA.1645-46</u>. Indeed, when the trial court offered to read the indictment as amended by the plea agreement, including jurisdictional enhancements, Wooten waived the trial court's offer to read the charges to him, with counsel saying "[t]here will be no

need to [read the indictment], Your Honor." ROA.1649. Thus, the transcript makes it abundantly clear that Wooten's decision to plead guilty was, not only intelligent and voluntary, but reflected a calculated decision by an experienced offender and defense attorney to prevent the prosecution from withdrawing its generous plea offer.

Wooten also repeatedly attempts to blame his attorney's "flatly incorrect advice" by lumping him in with the trial court's erroneous ruling. Appellant's Br. 31-38. Notably, his argument lacks any citations to the record for this point, because no record exists of how attorney, Rick Hamby, advised Wooten regarding the erroneous enhancement. *Id.*; *see* ROA.1433-34 (Hamby's affidavit); 1646 (six-minute discussion off the record with Hamby). As Wooten's own authority states, it is "appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson*, 426 U.S. at 647.

The record provides no basis to presume that counsel (mis)advised Wooten in a way contrary to *Henderson*'s presumption. Hamby is an extremely experienced defense attorney, claiming forty-three years of

criminal experience, including twenty years as a district attorney. ROA.1433. Based on Hamby's affidavit, he likely knew of the error or sensibly disregarded the possibility of error because, even if Wooten successfully challenged the indictment, he would yet again face a twenty-five-year minimum. That is, challenging the indictment could risk the prosecution effectuating its threat to withdraw their generous offer for a sentence *below the minimum sentence* applicable to Wooten if the prosecution decided to try Wooten as a habitual felon. *See* ROA.1433 ("Wooten's criminal history is quite florid . . . [the prosecutor] indicated he was quite willing to proceed with [trial] . . . [Wooten] did not want a jury trial due to his colorful past."); *see also* Part II(D), *infra* (explaining that Wooten could have been prosecuted as a habitual felon, with a minimum sentence of twenty-five years of confinement, even if the 1983 DWI were excluded as an enhancement). Given Hamby's experience, the record's silence on Hamby's advice, and Wooten and Hamby's reasonable and joint strategy to secure a favorable plea bargain, this Court cannot upset the state court's denial of this claim based on Wooten's conclusory allegations that Hamby misadvised him.

Thus, even if Wooten did not have to overcome the "strong presumption" favoring his sworn statements in court, his argument that he pleaded guilty involuntarily falls short. The transcript reflects that Wooten not only pleaded guilty intelligently, but also that he engaged in a shrewd strategy to preserve the trial court's error while also securing the maximum benefit of the prosecutor's plea offer. Presented with such a record, the state court acted reasonably by implicitly finding Wooten's "plea represent[ed] a voluntary and intelligent choice among the alternative courses of action." *Hill*, 474 U.S. at 56.

**D.** **Even if Wooten did not enter his plea intelligently, the error is harmless because Wooten sought and received the plea agreement he wanted.**

Even if this Court insisted that Wooten did not enter his plea intelligently, the state court also reasonably determined that his plea is not involuntary because the erroneous jurisdictional enhancement was harmless.

"Generally, when a federal court reviews a state-court judgment of conviction, 'a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable

possibility that it contributed to the verdict.'" *Atkins v. Hooper*, 979 F.3d 1035, 1049 (5th Cir. 2020) (quoting *Billiot v. Puckett*, 135 F.3d 311, 318 (5th Cir. 1998)). In rejecting the less deferential *Chapman* harmlessness test, the Supreme Court directs that, on collateral review of a state-court criminal judgment under 28 U.S.C. § 2254, federal courts must not upset a state court conviction unless a constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); s*ee also United States v. Dominguez-Benitez*, 542 U.S. 74, 81-82 (2004) ("In cases where the burden of demonstrating prejudice (or materiality) is on the defendant seeking relief, we have invoked a standard with similarities to the *Kotteakos* formulation in requiring the showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'") (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In short, a federal habeas petitioner must show "actual prejudice." *Brecht*, 507 U.S. at 637. This "harmless error" standard also applies to

claims involving involuntary guilty pleas. *Dominguez-Benitez*, 542 U.S. at 81 (guilty plea colloquy defects are not structural error); *United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013) (despite misadvice from federal district judge and counsel about the range of punishment, defendant's plea was not involuntary in a direct appeal because he did not "satisf[y] his burden of showing that but for the error, he would not have pleaded guilty"); *Taylor v. Hamlet*, 372 Fed. Appx. 749, 740 (9th Cir. 2010) (applying *Brecht* in affirming the denial of a claim that § 2254 petitioner pleaded guilty involuntarily).

Here, because Wooten procured the sentence he wanted regardless of whether he understood the nature of the jurisdictional enhancements, Wooten cannot show actual prejudice. Defense Counsel Hamby explained in his affidavit that Wooten "did not want a jury trial due to his colorful past," and the prosecution was "quite willing to proceed" with a jury trial. ROA.1433. This explanation is consistent with the transcript which records the prosecution declaring that it would "withdraw our offer" if Wooten insisted on appealing his enhancement. ROA.1646.

Hamby's explanation also comports with Wooten's criminal record, which reflects that, even if Wooten successfully quashed the original indictment and the prosecution correctly ignored his 1983 conviction for enhancement purposes, he was eligible for a punishment range from twenty-five years to life of confinement due to his criminal history. Wooten had previously stipulated to committing two different misdemeanor DWI's in 1986 (cause numbers 34,808 and 35,423 out of Howard County), one felony DWI in 2012 (cause number 13,389 out of Howard County), and felony theft in 1995 (cause number 0558770 out of Tarrant County). ROA.1351. Under Texas law,[6] his criminal history made this DWI punishable as a first-degree felony, with a *minimum* punishment of twenty-five years of confinement, even if the court ignored Wooten's 1983 DWI. Indeed, as pointed out in the CCA's denial of Wooten's suggestion for reconsideration, CCA precedent confirms that an erroneous enhancement predicated on an invalid conviction is harmless if the convict had other convictions that could be substituted

---

[6] For an explanation of relevant Texas law, the district court ably explains how Texas enhances DWI's and felony punishments based on prior convictions. ROA.1066.

in for the invalid enhancement. ROA.2087; *Ex parte Rodgers*, 598 S.W.3d at 269-70; *Ex parte Parrot*, 396 S.W.3d at 534-36.

In addition, the record suggests that the State had a high likelihood of proving Wooten's guilt at trial. Police reports indicate that Wooten admitted he was drinking, had an open beer in his car, behaved aggressively toward officers, and was given a blood test that proved his alcohol level was well above the legal limit. ROA.931, 1516. The evidentiary posture of his case explains why "[t]he possibility of a jury trial was always open to Mr. Wooten and he made clear that he did not want a jury trial." ROA.1433. It also explains why Wooten quickly and unambiguously waived his right to appeal the indictment issue when the prosecution threatened to revoke his plea offer. ROA.1646-48.

Given Wooten's criminal history and the strong evidence against him, the prosecution's plea offer of thirteen years was a gift and the record shows that Wooten knew it. So, even if this Court found his plea to be unintelligent due to misadvice from the trial court or counsel, Wooten cannot show that, but for this misadvice, he would have pleaded not guilty or secured a better plea offer. Even if the trial court

recognized the 1983 conviction as a deferred adjudication and quashed the indictment, the prosecution would have simply reindicted Wooten, this time substituting his September 1986 DWI for his 1983 DWI, and Wooten would be back right where he started: hoping for a 13-year plea offer to avoid trial.

For these reasons, the CCA correctly suggested any error in this case was harmless. ROA.2087 (the CCA citing *Ex parte Rodgers* and *Ex parte Parrot*). Or, at the very least, Wooten fails to show the state court acted unreasonably or contrary to Supreme Court precedent in deciding that Wooten's allegations were harmless. *See* 28 U.S.C. § 2254(d).

## III. The State Court Reasonably Denied Wooten's Trial Court Error Claim Because He Waived the Claim by Entering a Voluntary Guilty Plea and the Error Was Immaterial.

Refining his original due process claim into novel extension of Supreme Court precedent, Wooten now argues that he was denied due process because the trial court imposed his sentence based on "materially untrue" assumptions in the form of an erroneous enhancement ruling during the plea hearing. Appellant's Br. 16 (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) and *United States v.*

*Tucker*, <u>404 U.S. 443, 447-49</u> (1972)). But, because Wooten pleaded guilty voluntarily, this argument is waived. Alternatively, this argument is meritless because the erroneous enhancement was not material to the outcome of Wooten's case, and this Court's is barred from relitigating the state court's denial of Wooten's due process claim.

### A.  Wooten waived this claim when he voluntarily pleaded guilty.

As discussed in Part II *supra*, Wooten entered his guilty plea and plea agreement voluntarily, strategically waiving his claim that the trial court erred in violation of his due process rights. Because of his guilty plea and express waiver, he is now barred from pursuing his claim that the trial court deprived his due process rights when it made an erroneous pretrial ruling that Wooten's 1983 DWI could be used for enhancement purposes.

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, <u>411 U.S. 258, 267</u> (1973). Therefore, "[a] voluntary

guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." *United States v. Palacios*, <u>928 F.3d 450, 455</u> (5th Cir. 2019) (citation omitted). Indeed, this Court recognized that

> [a] voluntary and intelligent guilty plea does not become vulnerable to habeas corpus review simply because later judicial decisions indicate that the plea rested on a faulty premise or that the legal and factual evaluations of the defendant's counsel were incorrect.

*Taylor v. Whitley*, <u>933 F.2d 325, 327</u> (5th Cir. 1991) (citing *Brady v. United States*, <u>397 U.S. 742, 757</u> (1970)). For that reason, this Circuit has long held that challenges to erroneous enhancements are waived by voluntary guilty pleas. *Randle v. Scott*, <u>43 F.3d 221, 226</u> (5th Cir. 1995) ("An objection to the use of a 'prior invalid conviction for enhancement purposes' is waived when a plea of guilty is entered to the enhancement charged.") (quoting *Scott v. Maggio*, <u>695 F.2d 916, 922</u> (5th Cir. 1983)).

Since this claim does not challenge the voluntariness of his guilty plea, it should be dismissed as waived by Wooten's guilty plea. Perhaps recognizing that guilty pleas only waive "nonjurisdictional" defects, Wooten suggests that the error in this case is jurisdictional, claiming "[a]bsent [the trial court's error], the trial judge had no authority to

accept the felony plea, to enter conviction for a second-degree felony, and to impose a sentence of 13 years. The indictment could only support a conviction for a Class A misdemeanor . . ." Appellant's Br. 20. But his argument has already been rejected by the CCA in a nearly identical case.

In *Ex parte Rodgers*, 598 S.W.3d 262, the CCA addressed a case where a defendant pleaded guilty to felony DWI even though the indictment relied on an invalid jurisdiction enhancement. When the defendant later argued that the invalid enhancement divested the trial court of jurisdiction, the CCA rejected his argument. It stated "if the instrument comes from the grand jury, purports to charge an offense and is facially an indictment, then it is an indictment for purposes of Art. V. § 12(b), and its presentation by a State's attorney invests the trial court with jurisdiction to hear the case." *Id.* at 268 (internal quotation and citation omitted). The CCA found that the defendant forfeited the jurisdiction question by not objecting and thereby implicitly waiving the issue. *Id.* ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment . . .

before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.'") (quoting Tex. Code Crim. Proc. art. 1.14(b)). The only difference here is that, although Wooten properly objected to the indictment, he then *expressly* waived his objection in exchange for a lenient sentence. ROA.1647-48. But, since Wooten expressly waived his challenge to the indictment, he would not be able to challenge the trial court's jurisdiction over this case.

Because Wooten's claim that the trial court erred is nonjurisdictional and does not concern the voluntariness of Wooten's plea, it should be dismissed as waived by his voluntary guilty plea. *United States v. Coil*, 442 F.3d 912, 914 (5th Cir. 2006) ("An erroneous pretrial ruling is a non-jurisdictional defect that is waived by an unconditional guilty plea.").

**B.    The trial court's error was immaterial to the outcome of Wooten's case.**

Even if this Court finds that Wooten's *Townsend* claim was not waived by his guilty plea, it should be denied because the trial court's error was harmless and immaterial.

In *Townsend*, the defendant pleaded guilty to two counts of robbery and two counts of burglary without a plea agreement, and he was immediately sentenced to prison, all without benefit of counsel. *Townsend*, <u>334 U.S. at 737</u>. The trial judge then sentenced the defendant while relying on several charges which were either dismissed before trial or for which the defendant was acquitted at trial. *Id*. at 739-40. The Supreme Court held that the "careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, [ ] renders the proceedings lacking in due process." *Id*. at 741. The Court also noted, however, that "mere error in resolving a question of fact," even by an uncounseled defendant, would not necessarily indicate a lack of due process. *Id*. The Court explained: "Fair prosecutors and conscientious judges sometimes

53

are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law." *Id.* In *Tucker*, the Supreme Court reinforced this right to material accuracy, overturning a sentence predicated on several unconstitutional prior convictions. *Tucker*, 404 U.S. at 447.

Wooten's case is a far cry from those cases because Wooten voluntarily sought and accepted a negotiated sentence with the assistance of counsel. The trial court's mistake in not recognizing the 1983 DWI as a deferred adjudication is nothing more than "mere error," and, unlike the defendants in *Townsend* and *Tucker*, Wooten had experienced counsel who had the opportunity to correct the trial court's errors.[7] *See Townsend*, 334 U.S. at 741 (predicating its decision on the

---

[7] Because a *Townsend* claim relies on the denial of counsel, this claim hinges on Wooten's claim that he received ineffective assistance of counsel. *See Gibson v. Warden*, Case no. 11-cv-1954, 2017 WL 6803361, at *2 (W.D. La. October 2, 2017) ("Plaintiff has cited to no cases (and this court has located none) that hold that a federal habeas court may overturn a state court's sentence that was based on faulty information unless there is another constitutional violation such as ineffective assistance of counsel."). But, as described in Part IV *infra*, Wooten's counsel performed effectively, so he cannot receive relief on this claim.

defendant having "no opportunity to correct [the error] by the services which counsel would provide").

As explained in Part II(D) *supra*, the record shows that any error in this case was harmless. Wooten pleaded guilty and received the sentence he wanted, regardless of the trial court's error. Because the error in this case is "immaterial" and harmless under *Brecht*, the state court acted reasonably when it denied this claim and the relitigation bar prevents this Court from granting habeas relief. *See* 28 U.S.C. § 2254(d).

## IV. The State Court Reasonably Denied Wooten's Ineffective Assistance of Counsel Claim Because Wooten Voluntarily Pleaded Guilty and He Fails to Prove His Attorney Performed Deficiently or Prejudicially.

Wooten also faults Defense Counsel Rick Hamby for his negotiated sentence. He claims Hamby "either did not know that under Texas law a probated sentence did not qualify as a final conviction, or he did not know that Mr. Wooten's 1983 DWI resulted in a probated sentence, which meant that it was not a final conviction. Either way he failed to investigate and his failure prejudiced Mr. Wooten's case." Appellant's Br. 38. The Director notes three distinct flaws in this

allegation, each of which independently justify the state court's denial of relief: (1) Hamby's alleged deficiencies depends on speculative and conclusory factual allegations derived from an ambiguous record; (2) Hamby acted in accordance with a trial strategy to obtain the most favorable plea agreement possible; and (3) Wooten cannot show any prejudice resulting from the alleged deficiencies.

## A.    The *Strickland/Hill* standard of review

The Supreme Court has held that the two-prong test enunciated in *Strickland*, 466 U.S. 668, applies to cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). The duty of an attorney to a defendant who desires to enter a plea of guilty is to ascertain that the plea is voluntarily and knowingly made. *Randle*, 43 F.3d at 225. Under *Strickland*, a petitioner must show that counsel's performance was deficient, and that the deficient performance resulted in prejudice. *Strickland*, 466 U.S. at 687. Because a petitioner must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *Id.* at 697. Plus, in determining the merits of an alleged Sixth

Amendment violation, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Id.* at 687-89.

Additionally, with respect to the second prong of the *Strickland/Hill* test, a convict may not simply allege, but must "affirmatively prove" prejudice. *Id.* at 693; *see also Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) ("A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test."). In the guilty plea context, prejudice means "that there is a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Even without accounting for the AEDPA deference owed to the state court, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). But this bar raises even further when considered in conjunction with 28 U.S.C. § 2254(d)— "the standards created by *Strickland* and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so."

*Richter*, <u>562 U.S. at 105</u>.

**B. Wooten's claim fails the deficiency prong of *Strickland*, because his claim is conclusory and fails to rebut the presumption that Hamby performed in accordance with sound trial strategy.**

Wooten asserts Hamby performed deficiently in his representation of Wooten by misadvising him and failing to investigate his 1983 DWI enhancement. In support, he claims "[t]he record leaves no doubt that Hamby did not investigate whether the 1983 DWI was a final conviction eligible to enhance the instant offense to a felony . . . which led to his failure to properly advise Mr. Wooten of the correct sentencing range and to correct the trial court's error." Appellant's Br. 39-40. Because the record shows that Hamby acted in accordance with Wooten's wishes and did so in a manner that was consistent with sound trial strategy, Wooten fails to rebut the presumption that Hamby represented Wooten using sound trial strategy. *See Strickland*, <u>466 U.S. at 689</u> (stating "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

At the outset, Wooten's accusations suffer from the glaring fact that the record is silent about how Hamby advised Wooten or investigated Wooten's case. So, Wooten's claim depends on pure speculation about Hamby's silence: "If [Hamby] had known, he *surely* would have said something . . . he *presumably* would not have allowed Mr. Wooten to waive his right to appeal. And he *surely* would have said something when preparing an affidavit in response to Mr. Wooten's allegations . . ." Appellant's Br. 39 (emphasis added). The purely speculative nature of this claim, alone, is basis for this Court to reject it. *See Jenkins v. Vannoy*, No. 17-30842, 2018 WL 11301544, at *3 (5th Cir. Nov. 21, 2018) (rejecting IAC claim relying on "speculative, conclusory, and self-serving assertions regarding his counsel's investigatory efforts").

Even disregarding the speculative nature of this claim, the state court could have reasonably believed that Hamby represented Wooten in a manner consistent with a sound strategy. Hamby plainly laid out Wooten's stark situation and their attendant strategy:

> Mr. Wooten's criminal history is quite florid therefore I knew
> that [the prosecutor's] mindset would be a hard one . . . Mr.

> Wooten said he wanted me to better the plea offer and did not want a jury trial due to his colorful past . . . at the time of Mr. Wooten's plea of guilty I once against stressed to him the possibility of a jury trial. Once again, he said he did not want a jury trial. [The prosecutor] said that if Mr. Wooten did not accept the plea offer he would withdraw with a result of a jury trial being a certainty."

ROA.1433. So, Hamby's strategy was to negotiate the best plea offer possible, because Wooten rightfully believed his criminal history put him at risk of an extremely lengthy sentence. Waiving the appeal and not pursuing the indictment error were consistent with this strategy. The reasonableness of this strategy conforms with the direct guidance of *Strickland*, which advised:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information . . . when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

[466 U.S. at 691](). Considering Wooten's situation and stated wishes, investigation and advice about the indictment error was irrelevant; his strategy was to secure a favorable plea bargain and he did so.

On the other hand, Wooten's suggestion that Hamby should have quashed the indictment based on the 1983 DWI enhancement would have been poor strategy, because it would have directly violated Wooten's goal of receiving a favorable plea offer. Again, even without the 1983 DWI, the prosecution could have reindicted Wooten for felony DWI as a habitual offender, with a punishment range of twenty-five years to life. *See* Part II(D), *supra* (explaining how the indictment error was harmless). Beyond that, challenging the erroneous enhancement risked worsening his plea offer, because the prosecutor made it quite clear that his patience with Wooten was minimal. *See* [ROA.1433]() ("[The prosecutor] indicated he was quite willing to proceed with [a jury trial]"); [ROA.1646]() (prosecution threatening to withdraw its plea offer if Wooten continued trying to challenge the indictment). Thus, Wooten had a "powerful strategic reason" for not attempting to quash the indictment in this case. *Brown v. Cain*, [337 F.3d 546, 549-50]() (5th Cir.

2003) (finding no ineffective assistance of counsel for failure to file a motion to quash the indictment, where the effect of a successful motion would have simply caused the State to obtain a second indictment to correct the error and possibly lead to a harsher sentence); *see also Ex parte Rodgers*, 598 S.W.3d at 266 (trial counsel determining that "filing a motion to quash the indictment would have been a 'poor strategy' because Applicant had at least two other prior DWI convictions that would have been available to be substituted as jurisdictional-enhancement allegations").

This claim therefore fails the first prong of *Strickland*, as Hamby's representation was consistent with sound trial strategy, as well as Wooten's own wishes. Moreover, he cannot meet the "double deference" requiring him to also show that the state court unreasonably applied, or acted contrary to, Supreme Court precedent or federal law when it denied this claim. 28 U.S.C. § 2254(d); *see Richter*, 562 U.S. at 105.

## C. As explained above, Wooten cannot prove that Hamby's representation prejudiced him.

Wooten also asserts that "if anyone had confirmed for Mr. Wooten that the 1983 DWI would not qualify [as a jurisdictional enhancement],

he would not have pleaded guilty and he would not have waived his right to appeal." Appellant's Br. 42. Beyond the fact that this assertion consists of nothing more than a "mere allegation," Wooten fails to satisfy the prejudice prong for the same reasons he cannot show that the allegedly-involuntary plea or the trial court's erroneous ruling harmed him. That is, the state record affirmatively proves that Wooten's criminal history would have been sufficient to charge him with felony DWI as a habitual felon, with a punishment range of twenty-five years to life, even if the charges disregarded the 1983 DWI. ROA.1351; see Part II(D), *supra*.

Given the fruitless prospect of objecting to the indictment's enhancement error, Wooten cannot show that, but for Hamby's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. Moreover, he cannot meet the "double deference" requiring him to also show that the state court unreasonably applied, or acted contrary to, Supreme Court precedent or federal law when it denied this claim. 28 U.S.C. § 2254(d); *see Richter*, 562 U.S. at 105.

## V. Wooten Fails to Show That "Law and Justice" Warrant a Grant of Habeas Relief.

Even if Wooten established constitutional error and this Court believes the state court acted unreasonably in denying his claims, "law and justice" would still require denying his petition. 28 U.S.C. § 2243.

"As the Supreme Court recently reminded us, habeas is and always has been a discretionary remedy." *Crawford v. Cain*, 68 F.4th 273, 286 (5th Cir. 2023) (citing *Brown v. Davenport*, 142 S.Ct. 1510, 1520-24 (2022) and *Shinn v. Ramirez*, 142 S.Ct. 1718, 1731 (2022)); *see* 28 U.S.C. 2241 (Writs of habeas corpus *may* be granted . . .") (emphasis added). "So even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief." *Davenport*, 142 S.Ct. at 1524; *see also Shinn*, 142 S.Ct. at 1731 ("[E]ven if a prisoner overcomes all of [AEDPA's] limits, he is never entitled to habeas relief. He must still persuade a federal habeas court that law and justice require it."). "Law and justice do not require habeas relief . . . when the prisoner is factually guilty." *Crawford*, 68 F.4th at 287.

Here, granting habeas relief to Wooten would be contrary to "law and justice." 28 U.S.C. § 2243. Wooten does not dispute that he committed the instant offense of DWI. Appellant's Br. 44. Nor does he dispute committing at least two prior DWI's. *Id*. Indeed, including his 1983 deferred adjudication for DWI, the record shows Wooten has committed *five* total DWI's. ROA.1351, 1388-91. The record before this Court also confirms he has convictions for burglary and felony theft. ROA.859-62.

Not only does Wooten's record reflect the sort of recidivist criminal which Texas intended to incapacitate through long periods of incarceration, but his sheer number of DWI's together with the police reports indicate that his behavior poses a severe danger to the public. He was not just a little buzzed while driving in this case. He was wasted. He did it brazenly, with an open beer in the car, and had a demonstrable lack of remorse by reacting to his arrest with extensive screaming and cursing at his arresting officers. ROA.931, 1516.

Wooten has been paroled, so the only entity restraining Wooten from engaging in his reckless habits is the Texas Board of Pardon and

Paroles. Given the record before it, "law and justice" require this Court to let the State do its job of working with Wooten to prevent him from continuing his past pattern of endangering the public.

## CONCLUSION

For the foregoing reasons, the Director asks this Court to finally put this case to rest and affirm the judgment of the district court.

Respectfully submitted,

JOHN SCOTT
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*Lead Counsel

s/ Nathan Tadema
NATHAN TADEMA*
Assistant Attorney General
State Bar No. 24044285

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 936-1280 (FAX)

ATTORNEYS FOR RESPONDENT-
APPELLEE

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I do hereby certify that this brief complies with Fed. R. App. Proc.
32(a)(7)(C) and that it contains 12,597 words in Microsoft Word,
Century font, 14 points.

s/ Nathan Tadema
NATHAN TADEMA
Assistant Attorney General

## CERTIFICATE OF SERVICE

I filed this brief via the Court's ECF system on the 28th day of
June, 2023. Opposing counsel, James Matthew Wright, is a registered
filer and deemed served.

s/ Nathan Tadema
NATHAN TADEMA
Assistant Attorney General

**CERTIFICATE OF COMPLIANCE WITH ECF STANDARDS**

I do hereby certify that (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.1; (2) this electronic submission is an exact copy of the paper documents; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

<u>s/ Nathan Tadema</u>
NATHAN TADEMA
Assistant Attorney General